Argued February 21, affirmed March 14, 1950

# WHITE *v.* KELLER ET UX.

215 P. (2d) 986

*Larry Landgraver,* of Portland, argued the cause for appellant. With him on the briefs were Norman L. Easley and Leo Levenson, of Portland.

*Robert T. Mautz,* of Portland, argued the cause for respondents. On the brief were Cake, Jaureguy & Tooze, Wilbur, Beckett, Oppenheimer, Mautz & Souther, and David Sandeberg, of Portland.

Before LUSK, Chief Justice, and BRAND, BELT, BAILEY and LATOURETTE, Justices.

BELT, J.

This is an action to recover damages resulting from a collision between two automobiles which occurred on Sunday, June 15, 1947, about 10:30 p. m. on highway 99-W approximately six miles north of Newberg. The cause was submitted to a jury and a verdict returned in favor of the defendants.

The plaintiff was riding in an automobile driven by her husband and which she owned. Plaintiff and her husband were en route to their home in the city of Portland after having visited their grandchildren at Eugene, Oregon. The White car was traveling in a northerly direction at a speed of 45 miles per hour when the Keller car—owned by the defendant, Homer H. Keller, and driven by his daughter, the defendant, Verna Keller—was first seen 200 to 300 feet away approaching from the north. Verna Keller was accompanied by her friend, Eleanor Burton, and they were going to Salem, Oregon, where they had secured employment in a cannery. The plaintiff in her second amended complaint and the defendants in their answers and counter-claims allege numerous specifications of negligence, but the real question for the jury to decide in this almost head-on collision was which driver was on the wrong side of the highway. Obviously, if each driver had kept on his right side of the highway, no collision would have occurred. It is not contended that the Keller car was being driven at a high and dangerous speed. Mr. White testified in reference to its speed: "I just considered they were travelling in a normal manner * * *." It had been raining and the black-top pavement was wet and slippery. The traffic to and from Portland was heavy.

Plaintiff's husband testified that at the time of the collision the right front wheel of the White car was on the extreme east edge of the pavement and that the rear end thereof was completely off the pavement. The left front part of the Keller car collided with the right front end of the White car. In view of this undisputed evidence it is a reasonable inference that at the time of the impact the White car must have been some-

what crosswise on the highway. Otherwise, the cars in all probability would not have collided in such manner. The impact was so great that the motor of the White car was thrown about ten feet east of the edge of the pavement. Both cars were badly wrecked and had value only as junk. After the collision the cars came to rest on the west side of the highway and were approximately 84 feet apart. The right front wheel of the White car—which was facing north—was seven feet and its right rear wheel was four feet from the edge of the pavement. The Keller car—which had skidded into a ditch—was headed south toward Newberg.

White said that after he first saw the Keller car, he drove 125 to 150 feet at a reduced speed of 35 miles per hour before the collision occurred. White emphasized the fact that he was troubled by the bright lights of the Keller car, but we think that matter must be disregarded since there was no charge of negligence in reference thereto. When White applied the brakes, he momentarily lost control of the car and it went into a ditch about eight feet east of the edge of the pavement. He succeeded, however, in getting out of the ditch under his own power. There was no debris on the pavement indicating where the cars came together. Mr. White's testimony is not clear concerning the point of impact. He speaks of the Keller car being "over the line," but stated, "I couldn't I wouldn't say exactly they were over in my lane or line." On the following Tuesday, Mr. White inspected the scene of the accident and observed some "gouges" in the pavement about 32 inches east of the yellow center stripe, which plaintiff contends were caused by the damaged spring or axle of the Keller car. White

did not observe conditions immediately after the collision as he was suffering from nausea and shock.

Mr. White was the only eye witness to the accident. The plaintiff said she heard her husband say, "Damn those lights," and that she looked up and saw them "coming right pell mell into us," and "that is the last, I can remember." Miss Burton was asleep at the time of the accident and did not awaken until she was in the hospital at Portland. The Keller girl was so shocked as a result of the collision that her mind was blank about what occurred.

Ralph Blank, a state police officer whose business was to investigate traffic accidents, arrived on the scene a few minutes after the collision and remained there over an hour. The Keller girl and her friend were still in their car in a dazed condition. The officer said he was unable to determine the point of impact. He found no debris on the highway and no skid marks on the east side thereof. He said, however, that he did find marks on the west shoulder of the highway where the Keller car "slid sideways into the ditch" and fresh tire marks leading "right up to the White car." The officer further testified that he saw no "gouges" in the pavement, referred to by Mr. White.

Carlyle Anderson, a witness called on behalf of the plaintiff and who operates a small motel near the scene of the accident, testified about seeing, *on the following morning,* three marks about a foot long on the east side of the pavement approximately three feet from the center line. In describing those marks, the witness said that they appeared to have been made "by some sharp instrument, somewhat similar to where you see a cultivator or a disc having run on a macadamized surface; they weren't very deep." We

attach no particular significance to this testimony as it is entirely speculative as to what might have caused the marks. Shortly after the accident in question, a car going toward Portland skidded into the ditch on the east side of the highway, and it was necessary for another car to pull it out of the ditch. The police officer said the car had dropped into the ditch to such an extent that when it was pulled out, its running gear dragged on the pavement. If we are going to indulge in speculation, it might just as well be argued that the marks were caused by the car which was pulled out of the ditch as it would be to contend that the marks were made by the Keller car.

■ Plaintiff contends that there is no substantial evidence tending to show negligence on the part of her husband and that the court erred in submitting the issue of contributory negligence to the jury. We think the evidence is sufficient to justify a jury in drawing a reasonable inference that plaintiff's husband lost control of the car and at the time of the impact was driving on the wrong side of the highway. The jury was not bound to accept the version of Mr. White as to how the accident occurred merely because he was the only eye witness thereto. This is a case where the facts and circumstances speak of negligence by the driver of the north-bound car. At any rate, the question was clearly one for the jury to decide and not for the court to determine as a matter of law. Where different reasonable inferences can be drawn from the evidence relative to the issue of negligence, the question is for the jury. It is equally well settled that negligence may be inferred from the facts and circumstances surrounding an accident. *Davis v. Lavenik,* 178 Or. 90, 165 P. (2d) 277; *Natwick v. Moyer,* 177 Or. 486, 163 P. (2d)

936; *Greenslitt v. Three Bros. Baking Co., Inc.,* 170 Or. 345, 133 P. (2d) 597; 5 Am. Jur., Automobiles, 849, § 626. Negligence may be shown by indirect as well as by direct evidence.

 In this jurisdiction—although the authorities are in conflict elsewhere—it is well settled that proof of ownership of an automobile is sufficient to establish a prima facie case of agency. When ownership of an automobile has been proven, an inference may be drawn therefrom that the driver was acting as agent of the owner and in furtherance of his interests. *Summerville v. Gillespie,* 181 Or. 144, 179 P. (2d) 719; *Steele v. Hemmers,* 149 Or. 381, 40 P. (2d) 1022; *Judson v. Bee Hive Auto Service Co.,* 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944; *Sather v. Giaconi,* 110 Or. 433, 220 P. 740; *Doherty v. Hazelwood Co.,* 90 Or. 475, 175 P. 849, 177 P. 432; *West v. Kern,* 88 Or. 247, 171 P. 413, 1050, L. R. A. 1918D 920; *Houston v. Keats Auto Co.,* 85 Or. 125, 166 P. 531. There is a stronger inference of agency when the owner is riding in the car at the time in question. Of course, this inference of agency may be refuted or overcome by evidence showing that in fact the relationship of principal and agent did not exist. *Summerville v. Gillespie,* supra; *Judson v. Bee Hive Auto Service Co.,* supra. In the instant case the ownership by plaintiff of the automobile driven by her husband was admitted in the pleadings. Furthermore, the registration of the automobile with the Secretary of State was in the name of the plaintiff. We think the ownership of the car was not an issue in the case. An offer of proof that Mr. White had the car registered in the name of his wife "for the reason that at that time he had supposed or hoped that he would be in position to get another automobile

and that that automobile was to go into his name and that the purpose of putting it into Mrs. White's name is merely a gesture upon his part, the same as he would give a present to his wife * * *" was properly rejected by the court. If Mr. White had made a present of the car to his wife, she certainly would be the owner thereof.

■■■■ Ordinarily, whether an inference of agency has been overcome is a question for the jury to determine, but as said in *Judson v. Bee Hive Auto Service Co.*, supra, at page 14:

"* * * if the evidence is of such character that but one reasonable deduction can be made therefrom the court may so declare as a matter of law."

It having been shown that plaintiff was riding in the car owned by her and driven by her husband on a trip for their mutual benefit and pleasure, we think the only reasonable deduction that can be made from such evidence is that plaintiff's husband was acting as her agent and in furtherance of her interests. *Herzog v. Mittleman*, 155 Or. 624, 65 P. (2d) 384, 109 A. L. R. 662. Plaintiff was not a guest nor was she a joint owner of the car, as in *Christensen v. Hennepin Transportation Co.*, 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, relied upon by plaintiff. In view of the evidence, the court did not err in instructing the jury that if the driver of the White car was negligent, his negligence could be imputed to the plaintiff. Ownership implies the right of control. There was no evidence offered by the plaintiff that she had abrogated or surrendered to her husband her right to control the operation of the car. It is true that the plaintiff, for the purpose of overcoming the inference of agency by reason of her ownership of the car, offered to show

that while she was riding with her husband, she did not undertake to direct him as to the "course in which she was to travel" or the manner in which he was to drive; but we think such evidence had no probative value relative to the question of agency, and the court did not err in rejecting it.

Plaintiff also relies on *Rodgers v. Saxton*, 305 Pa. 479, 158 A. 166, 80 A. L. R. 280. The court in that case held that a wife riding in her own car which was being driven by her husband was not prima facie chargeable with his negligence. While the authorities are conflicting on the question, such is not the law in this state.

■ *Gochee v. Wagner*, 257 N. Y. 344, 178 N. E. 553, is more in keeping with the rule in this jurisdiction. In that case the negligence of the owner's wife was held imputable to him in an action by him to recover for personal injuries and for damage to his car where it appeared that his wife drove his car to get his mother and on the way home stopped at his father's house, and he got into the car and sat on the rear seat intending to ride to his home. The court said:

> "It was respondent's car, he was present and had the legal right to control its operation, and the negligent conduct of the driver was imputable to him. The mere fact that he chose to sit on the rear seat and refrained from directing its operation did not change his rights or limit his liability."

We agree with the contention of the plaintiff-appellant that the mere existence of the marital relation would not in itself have the effect of imputing the negligence of the husband to the wife, the owner of the car. It is the ownership from which the inference of agency arises. We deem it unnecessary to consider the applica-

bility of the "family-car doctrine," which obtains in this state.

■ ■ Error is assigned because of the ruling of the court in refusing to receive in evidence as exhibits the front spring and axle of the Keller car. It is the contention of the plaintiff that there was some asphalt adhering to the end of the spring and axle that came from the "gouges" in the highway on plaintiff's side of the road. It appears from the evidence that several months after the accident plaintiff purchased the spring and axle of the Keller car when it was at a wrecking lot. The court rejected this evidence for the reason that it was not shown that the spring and axle were substantially in the same condition as at the time of the accident. It will be recalled that plaintiff's husband did not observe the spring and axle at the time in question nor did he have any knowledge as to how such parts were handled at the wrecking lot. The court received in evidence without objection pictures taken in November, 1947, of the Keller car showing the condition of the spring and axle. These pictures were taken before the spring and axle were purchased. We think the trial court did not abuse its discretion in sustaining the objection to the introduction of such evidence. § 2-820, O. C. L. A.; 20 Am. Jur., Evidence, 600, § 717. It is elementary that before a material object may be admitted in evidence, it must be shown that there has been no substantial change in condition since the time in issue.

Finding no reversible error in the record, it follows that the judgment is affirmed.