Evelyn O'DONNELL, Plaintiff,

v.

WATSON BROS. TRANSPORTATION COMPANY, Inc., a corporation, and Wiliam E. Hearn, Defendants.

No. 58 C 642.

United States District Court
N. D. Illinois, E. D.

April 4, 1960.

Garr & Lima, Chicago, Ill., for plaintiff.

Pretzel, Stouffer & Nolan, Chicago, Ill., for defendants.

MINER, District Judge.

This is an action to recover for personal injuries sustained when plaintiff's automobile was struck by the vehicle owned and operated by defendants. The complaint demands judgment in the amount of $150,000. Defendants, in their respective answers, denied that plaintiff was free from contributory negligence, that they were guilty of any negligence whatsoever, and that plaintiff has sustained damages by reason of the accident.

On the Court's own motion, an order was entered pursuant to Rule 21 of the Civil Rules of the Northern District of Illinois that there be separate trials on the issues of liability and damages. Rule 21 reads:

"Pursuant to and in furtherance of Rule 42(b), Federal Rules of Civil Procedure, to curtail undue delay in the administration of justice in personal injury and other civil litigation wherein the issue of liability may be adjudicated as a pre-requisite to the determination of any or all other issues, in jury and non-jury cases, a separate trial may be had upon such issue of liability, upon motion of any of the parties or at the Court's direction, in any claim, cross-claim, counter-claim or third-party claim.

"In the event liability is sustained, the Court may recess for pre-trial or settlement conference or proceed with the trial on any or all of the remaining issues before the Court, before the same jury or before another jury as conditions may require and the Court shall deem met.

"The Court, however, may proceed to trial upon all or any combination of issues, if, in its discretion, and in the furtherance of justice, it shall appear that a separate trial will work a hardship upon any of the parties or will result in protracted or costly litigation."

Prior to trial on the issue of liability, it appeared that defendants were willing to offer in compromise and settlement of the case the sum of $16,000. The trial resulted in a jury verdict finding the defendants guilty as charged in the complaint, and the case was recessed for further settlement negotiations in chambers. At that stage of the proceedings defendants raised their offer for settlement to the sum of $27,000. Plaintiff's counsel requested that the trial on damages be continued pending consideration of the defendants' offer and for possible further negotiations with a view to an amicable settlement of the amount-of-damages aspect of the case. Plaintiff also expressed a desire to submit herself for additional x-ray plates for use on the issue of damages. Thereupon defendants' counsel moved for leave to petition for the appointment of an impar-

tial medical expert in accordance with Rule 20 of the Civil Rules of this Court.[1]

This Court was thus presented with the alternatives (1) of requiring that trial on the damage issue be had before the same jury to which had been submitted the liability question, or (2) of discharging that jury by agreement of the parties and continuing the damage issue for trial before another jury to be thereafter impaneled in the event no settlement were effected.

■■ The Court is of the opinion that the better and preferred practice is to submit the damage issue to the same jury which has decided the liability issue. It is the more expeditious, economical and less time-consuming procedure. Anticipating the trial of all issues to the same jury, the courts should permit that jury to be interrogated and qualified concerning damages as well as liability. Where, however, liability is established and a settlement is anticipated or reached, but not yet consummated, or additional medical proof or further preparation for trial on damages is desired, and the attorneys require additional time, a stipulation may be entered to discharge that jury and to try damages before a new jury.

■ It might be noted that where trial of the liability issue is separated from that on damages, a jury verdict sustaining liability is neither an interlocutory order from which a separate appeal will lie, nor a final decision. See Parr v. United States, 1956, 351 U.S. 513, 519, 76 S.Ct. 912, 100 L.Ed. 1377; Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 178–185, 75 S.Ct. 249, 99 L.Ed. 233; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528; Roche v. Evaporated Milk Association, 1943, 319 U.S. 21, 30, 63 S.Ct. 938, 87 L.Ed. 1185; Metalock Repair Service, Inc. v. Harman, 6 Cir., 1954, 216 F.2d 611; Skirvin v. Mesta, 10 Cir., 1944, 141 F.2d 668, 671–672. It may be assigned as error and reviewed only on appeal from a final judgment in the case. Of course, judgment entered on a verdict of not guilty is final and appealable.

One should note, also, that in the event a new trial is ordered by an appellate court on appeal of the entire case, or by the trial court on motion, separate verdicts on separate issues may well reduce the number of issues to be retried. When the appellate courts become convinced that justice, indeed, will be serv-

---

1. Rule 20 provides:

"(a) Prior to the date set for the commencement of the trial of any personal injury suit, an examination (physical, medical, psychiatric, either or all) of the injured person, together with a report thereon, by an impartial medical expert or experts may be ordered— —

"(1) By a judge on his own motion, or

"(2) On the motion of counsel for either party after a hearing thereon, if a hearing is requested,

if, in the judgment of the court such an order will be in the interest of justice and will materially aid in the just determination of the cause. The granting or withholding of such an order shall be entirely discretionary with the court. A copy of the report of examination shall be given to the court and to the attorneys for the respective parties.

"Should the judge, at any time during the trial of the cause, consider it advisable, he may, in his discretion, and on his own motion, order such an examination and report.

"Any examination ordered shall be made by a member or members of a panel of examining physicians designated for his or their particular qualifications by the Illinois State Medical Society after consultation with the court.

"(b) At the termination of the case in this court, the trial judge shall fix the compensation of the expert or experts and, unless otherwise directed by the court, such compensation shall be taxed as costs and paid by order of court. The judge, in his discretion, may direct that the parties, or either of them, deposit with the Clerk of the Court security in a specified amount which may be used for the payment of such compensation.

"(c) In the event that the case shall go to trial after such examination and report have been made, or that trial shall be resumed, then either party or the court may call the examining physician or physicians to testify, in which event additional compensation may be allowed and taxed as costs as aforesaid."

ed, the separability principle will naturally result in partial remand for a new trial solely on the issue in the trial of which error was actually committed.

■■ In the case at bar, the practical necessities of dispensing justice, and the policy in favor of agreed disposition of pending causes wherever possible, require that the second alternative stated above be followed. The law generally, and our Rule 21 in particular, sanction trial of the damage issue to a second jury, in the discretion of the judge. But, without a stipulation, the court should invoke that procedure only in the event it does not work a hardship upon any of the litigants, does not result in unwarranted protracted litigation, and does not unduly increase the costs of suit.

■ Rule 21 was promulgated unanimously by the judges of this court with an express purpose to speed up the administration of justice without depriving litigants of any substantive or procedural benefit to which they may be entitled in law or in judicial discretion. The rule is intended to reduce trial time through simplification of issues, to increase settlements through more objective evaluation of cases by counsel and parties, to eliminate sympathy and prejudice in the trial of liability, and to prevent improper considerations which tend to compromise verdicts in the trial of damages.

Court congestion is a critical problem which strikes at the heart of the administration of justice.[2] The Attorney General, all the Supreme Courts and all the bar associations are desperately engaged in an effort to solve it.

Chief Justice Earl Warren of the United States ("Delay and Congestion in the Federal Courts", 42 J.Am.Jud. Soc. 6–7 (1958), summed up the challenge as follows:

"The delay and the shocking congestion in the Federal Courts today have created a crucial problem for constitutional government in the United States * * * it is compromising the quantity and quality of justice available to the individual citizen and, in so doing, it leaves vulnerable throughout the world the reputation of the United States. * * * "

Delay causes hardship. Delay brings our courts into disrepute. Delay results in deterioration of evidence through loss of witnesses, forgetful memories and death of parties and makes it less likely that justice will be done when a case is reached for trial. Delay effects settlements favorable to defendants because it slowly wears a claimant down and compels him to accept less money as time goes on. This is a serious evil.

The volume of personal injury litigation in federal and state courts is appalling. All agree that it is a result of the rapid expansion of population, the astronomical increase in the number, speed and use of automobiles, the constant crescendo of transportation by train, bus and air. The judiciary's work load is becoming more and more burdensome due to an endless flow of new legislation, court rules, current legal periodicals and books which must be read to keep abreast with professional evaluation, not to speak of voluminous briefs to read and intricate opinions to write. While we, in the United States District Court for the Northern District of Illinois, may well take pride in our record in disposing of both old and new cases, we also realize the gravity of the situation. We are determined to avoid any further congestion in our trial calendars and to safeguard our judicial system.

We live in an era of rapid change resulting from scientific, technical and economic progress. In this era every profession has moved forward with rapid strides—engineers, scientists, architects, physicians and accountants. Unfortunately, however, our own legal profession has been suffering from stagnation

2. Much of what follows repeats, in substance, my observations in "Court Congestion: A New Approach," 45 A.B.A.J. 1265 (December, 1959).

and lies prostrated behind the parade. While the others are enhancing their prestige—sad but true, we are losing the confidence of the people. As Justice Brandeis lamented: "The law has everywhere a tendency to lag behind the facts of life."

What we need urgently is a change in our judicial attitude toward the inadequacies of the old procedures. We must recognize the necessity for adopting modern methods for the disposition of litigation more speedily and more effectively without sacrificing any of our cherished substantive or procedural safeguards. Never before have we faced a greater challenge to eliminate outmoded technicalities for the preservation of human rights.

Chief Justice Arthur Vanderbilt observed some years ago:

"Although many litigants find plenty of just causes for complaint, it is in the courts and not in the legislatures that our citizens primarily feel the keen cutting edge of the law. If they have respect for the work of the courts, then the law will survive the shortcomings of every other branch of government, but if they lose their respect for the work of the courts their respect for law and order will vanish with it, to the great detriment of society."

Chief Justice Stone charged (Dedicatory Exercises of the Law Quadrangle, University of Michigan Law School 47 (1934)):

"Candor would compel even those of us who have the most abiding faith in our profession to admit that in our time the Bar has not maintained its professional position of public influence and leadership * * *. More and more the lawyer looks for his reward to the material benefits that too often tend to obscure his larger vision; that sometimes weakens even the confidence of clients in the lawyer's devotion to his interests."

There are two small groups of lawyers principally responsible for our present plight. Both insist upon trial by jury. The specialist lawyers for the plaintiffs, who corral most of the lucrative suits, believe that jury trials beget larger verdicts because juries take a more sympathetic view of liability and damages than do the judges. Statistics show that awards by juries are 20 to 40 per cent higher than in comparable cases tried by judges. (Zeisel, Kalven and Buchholz, Delay in the Court, a University of Chicago Law School Study 73 (Little Brown and Company, 1959). And lawyers in the other small group, in whose hands is concentrated most of the defense work, demand juries for the purpose of delay. As a result, most jury trials are continued constantly to accommodate the pleasure and convenience of these lawyers, raising havoc with the trial judges' calendars. Unfortunately, also, delay sometimes results in the unavailability of witnesses and the demise of the plaintiff.

There is no theory of law which gives a litigant the right to retain a particular lawyer without regard to whether that lawyer has time to try the case. Gray v. Gray, 1955, 6 Ill.App.2d 571, 580–581, 128 N.E.2d 602, 607. The Court in the Gray case (at page 578 of 6 Ill.App.2d, at page 605 of 128 N.E.2d) quoted Justice Jackson's statement in Knickerbocker Printing Corp. v. United States, 1954, 75 S.Ct. 212, 99 L.Ed. 1292.

"When more business becomes concentrated in one firm than it can handle, it has two obvious remedies: to put on more legal help, or let some of the business go to offices which have time to attend to it. I doubt if any court should be a party to encouraging the accumulation of more business in one law office than it can attend to in due time."

It is apparent that the legal profession is making little effort to abate undue continuances for the convenience of counsel. A report of the executive committee of the Cleveland Bar Association (May, 1958) discloses that 65 per cent of all civil cases in the local court of general jurisdiction are handled by fourteen

firms. In Philadelphia, approximately 80 per cent of the negligence cases are in the hands of a dozen plaintiff firms and even fewer defendant firms. A similar situation exists in Chicago and New York.

A special committee appointed by the American Bar Association to study the problem of court congestion has reviewed the situation thoroughly and prepared a helpful pamphlet dealing with the subject, which constitutes a major contribution to the Bench and Bar. (Ten Cures for Court Congestion (1959).) The Committee found (at page 8) that a delay problem exists when the time lapse between filing and judgment exceeds twelve months, and points out that the Executive Committee of the United States Attorney General's Conference on Court Congestion and Delay in Litigation and the Judicial Conference of the United States, have concluded that delay is excessive if it exceeds six months.

The pamphlet discloses that in 1958 the Superior Court of Cook County (Chicago), Illinois, was 57.3 months behind. Similarly, the Circuit Court of Cook County (Chicago), Illinois, was 38.2 months behind; the Supreme Court, Queens County (New York City), New York, was 38 months behind; the Superior Court, Fairfield County (Bridgeport), Connecticut, was 31.5 months behind; and Hartford, Connecticut, and Cleveland, Ohio, both have courts delayed over two years. These figures are based upon the delay between "at issue" and judgment. Obviously, if the time of filing were considered, the delays would appear even greater.

The number of cases filed annually in the United States District Courts has increased more than 60 per cent since 1941. The backlog of cases has risen more than 125 per cent, and over 38 per cent of all civil cases in the federal district courts today are subject to undue delay, that is, delay of from one to four years between the date of issue and the time of trial. The average delay in Brooklyn is 42 months; in New York City, Philadelphia and Milwaukee 26 months; in Denver 20 months; in Chicago 18 months, and in San Francisco 13 months. Between July 1, 1957 and March 1, 1958, the backlog in civil lawsuits in the United States District Courts increased by more than 5,000 cases, and it is continuing to rise. (1958 Proceedings of the Attorney General's Conference on Court Congestion and Delay in Litigation, page 21.)

It is reasonably accurate to state that the true bottleneck is the trial jury calendar. Judge Charles E. Clark, as Chairman of the 1956 Attorney General's Conference on Court Congestion and Delay in Litigation, pointed out that the real center of the problem is the jury calendar in accident cases. Professor Shelden D. Elliott, Director of the Institute of Judicial Administration in New York, points out that in a recent survey of ninety-seven trial courts representing all states, the nation-wide averages show an interval of 11.5 months from "at issue" to trial of jury cases, and 5.7 months for non-jury cases. Jury trials in civil cases have become rare, almost extinct, in England. (1958 Proceedings of the Attorney General's Conference on Court Congestion, page 129.) State and federal judges agree that we must concentrate on speeding up the jury trial process and increasing the settlement ratio.

Jury trials are prolonged by *voir dire*, instructions to juries, frequent recesses to discuss problems of law and procedure in their absence, opening statements, closing arguments, charges by the court, jury deliberations and mistrials. Statistics show that 23 per cent less time is consumed in examining witnesses in a bench trial than in a jury trial (Delay in the Court, 9 and 99) and that approximately 40 per cent less time is consumed in the trial of nonjury cases (Delay in the Court, page 78). Justice Peck reported that he found the jury trial on the average was two and a half times longer than the bench trial. ("Jury Trial on Trial", 28 N.Y.S.B.Bull. 322 (1956).) The element of appeal is by far a more frequent and costly factor in jury trials.

What can be done about trial congestion? Authorities on the subject vary somewhat in their recommendations: increase the number and scope of pretrials; insist upon the availability of counsel; reduce juries to six members; transfer cases to lower courts; shift judges; require certificates of readiness; secure impartial medical testimony; authorize interest on damages from the date of accident; give preference to non-jury trials; dispose of cases by administrative commissions, referees, auditors and other quasi-judicial officers; provide for court administrators, court reorganizations and more efficient judicial performance by increasing actual trial hours and conducting summer sessions. It is the virtually unanimous opinion that, because of political and economic considerations, any remedial legislation to supply a sufficiency of additional judges and increased trial facilities is remote. No one of these remedies suggests an adequate solution.

It appears vital that there be a basic revision in the general approach to this subject if the prevailing deplorable conditions are to be ameliorated. The alarming problem constitutes a major challenge to our courts, to our moral foundations and to our professional self-respect. We had better act promptly or prepare for even greater disaster. Any attempt to reduce the backlog by appeasement is futile. We must resort to more drastic action or we shall drive people from our courts to other forums. Delay problems led to workmen's compensation statutes. If our administration of justice is not improved, the same sort of thing will occur in the personal injury area. Justice Peck, one of New York's leading authorities on court administration, advocated the direct elimination of jury trials in this field (1958 Proceedings of the Attorney General's Conference on Court Congestion, page 29).

Digressing from the federal court problem, the state courts that are plagued with crushing backlogs, such as Illinois, New York, Connecticut, Ohio and others, may well sponsor legislation providing for voluntary abatement of jury trials in civil cases if and when the third or fourth continuance on the ground of engagement of counsel is procured. No lawyer or litigant has a right to expect a venire of jurors to be maintained perpetually to suit his readiness.

Under the Fourteenth Amendment, the due process clause neither implies that all trials must be by jury nor guarantees any particular form or method of state procedure, and denial of a jury trial in a state court is not a denial of due process of law. Olesen v. Trust Co. of Chicago, 7 Cir., 1957, 245 F.2d 522, certiorari denied 355 U.S. 896, 78 S.Ct. 270, 2 L.Ed.2d 193. A general right of the court to regulate and restrict the right of trial by jury has been sustained. Reese v. Laymon, 1954, 2 Ill. 2d 614, 119 N.E.2d 271. 50 C.J.S. Juries § 90, p. 798, provides: "In the absence of constitutional restriction, the legislature has power to determine the mode of waiver and what acts or omissions shall deprive a litigant of a trial by jury in a civil action, and the court has no power to make rules contrary to such statutory provisions." Of course, all judges may, individually or uniformly by rule of court, federal, state, county or city, decline to grant a third or fourth continuance on the ground of engagement of counsel for plaintiff or defendant, but they may suggest the withdrawal of the jury demand, if the continuance is granted.

The late Chief Justice Arthur Vanderbilt counselled (1958 Proceedings of the Attorney General's Conference on Court Congestion, page 11): "The practical solution of these problems, given a real determination to solve them, is much simpler than most people suspect. It is not the knowledge of ways and means that we lack; it is the will to put them into effect."

I am a devout believer in our jury system and would vigorously oppose the slightest violation thereof. I am fighting to preserve it by repelling any and every encroachment upon it. Our task

ahead is not in reviewing past mistakes and deficiencies but in taking positive and effective remedial action.

Since personal injury cases comprise a great percentage of our litigation, I recommended to my colleagues the adoption of a rule by our court to provide that in personal injury and other civil cases wherein the issue of liability may be adjudicated as a prerequisite to the determination of any and all other issues, both jury and nonjury, the issue of the liability of the defendant or counter-defendant be first adjudicated and the issue of the nature and extent of the injuries and the amount of damages be litigated only after a finding of guilty. Rule 21 was shortly thereafter adopted.

This rule may collide with the fixed attitudes of the two small groups of lawyers for obvious reasons, but it will be a blessing to the vast majority of attorneys for plaintiffs and defendants who want their early day in court.

The unarticulated basis for partisan plaintiffs' objections to the rule is that it removes sympathy from the juries' deliberations on liability; for the partisan defendants, on the other hand, it is that the rule tends to eliminate compromise damage verdicts wherein jurors who are not convinced that there is liability subscribe to a guilty verdict if the remaining jurors agree to lesser recovery. But these ends are precisely what the rule is intended to achieve—the elimination of sympathy, prejudice and other improper pressures from jury trials. These ends are fundamental in the true administration of justice. Courts have always admonished jurors to abide by these precepts, the adherence to which is vitalized by Rule 21.

The Rule will modernize the introduction of evidence, with fewer and simpler issues to be submitted to the jury. It will reduce the trial burden in the numerous personal injury cases in which findings of "not guilty" are had. (See 1958 Proceedings of the Attorney General's Conference on Court Congestion and Delay in Litigation, page 57.) It will eliminate or reduce so-called "nuisance" cases in which liability is doubtful. Deserving plaintiffs will get prompt hearings with resulting prompt payment, and innocent defendants will be absolved of liability without incurring added expense.

A plaintiff with a doubtful case will not brave separate trial on liability without exhausting every possibility for settlement. He will more carefully assess the strength of his case and will not turn a deaf ear to a reasonable offer of settlement before an adverse verdict. On the other hand, defendants who anticipate guilty verdicts and their consequent exposure to relatively high damages, will also be more anxious to explore every avenue and will come up with more substantial offers for settlement. Then, too, where there are multiple defendants, each denying liability and blaming the other, this being the principal obstacle to compromise, the separate trial of liability will determine responsibility and pave the way for settlement.

The Rule will induce lawyers to prepare for trial more readily. It will afford greater opportunity to apply effectively our recently adopted impartial medical expert testimony rule. (See Chapter 11, Delay in the Court.) It will result in the true, prompt and proper administration of justice.

The Rule provides that the trial judge may, in his discretion, order one jury to decide upon the liability of the defendant and the same or another jury to determine the damages of the plaintiffs. The judge may recess after a decision of guilty on liability for pre-trial or settlement conference or proceed with the trial. The right to a trial by jury does not require that all issues be determined by the same jury and severance of the issues is not violative of any constitutional guarantee. Gasoline Products Co. v. Champlin Refining Co., 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed.

1188; Devine v. Patteson, 6 Cir., 1957, 242 F.2d 828, 832–833, certiorari denied 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36; Washington Gas Light Co. v. Connolly, 1954, 94 U.S.App.D.C. 156, 214 F.2d 254, 256–258; May Department Stores Co. v. Bell, 8 Cir., 1932, 61 F.2d 830, 842–843; Simmons v. Fish, 210 Mass. 563, 568, 97 N.E. 102, 104.

The basis for the Rule is the necessity to prevent undue delay in litigation and to promote the interests of all parties. What can be fairer? This Rule is not intended as a panacea, but it will definitely establish a turning point and permit revision of our thinking. It will open the legal channels to new reforms. As Justice Brandeis said (Ex parte Peterson, 253 U.S. 300, at pages 309–310, 40 S.Ct. 543, at page 546, 64 L.Ed. 919):

> "The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained. Walker v. New Mexico & Southern Pacific R. R. Co., 165 U.S. 593, 596, 7 S.Ct. 421, 41 L.Ed. 837. * * * It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with."

See, also, Galloway v. United States, 1943, 319 U.S. 372, 390, 63 S.Ct. 1077, 87 L.Ed. 1458; Byrne v. Matczak, 3 Cir., 1958, 254 F.2d 525, 529, certiorari denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58.

The rule is supported by the sound principle that the decision on liability may dispose of the entire case. 88 C.J.S. Trial § 10. Indeed, the general legal principle, recently reaffirmed by our Court of Appeals in Schybinger v. Interlake Steamship Co., 7 Cir., 1959, 273 F.2d 307, is that "the question of liability [must be considered] first before [consideration of] the question of damages." Id., at page 313. The authorities universally hold that the District Courts are empowered to order a separate jury trial on the issue of liability as a prerequisite to holding a jury trial on the issue of damages. See United States v. Burnett, 9 Cir., 1958, 262 F.2d 55, 59; Nettles v. General Accident Fire & Life Assurance Corp., 5 Cir., 1956, 234 F.2d 243, 247; Hassett v. Modern Maid Packers, Inc., D.C.D.Md.1959, 23 F.R.D. 661, 664; Lyophile-Cryochem Corp. v. Chas. Pfizer & Co., D.C.E.D.N.Y.1947, 7 F.R.D. 362, 363; Rickenbacher Transportation, Inc. v. Pennsylvania R. Co., D.C.S.D.N.Y. 1942, 3 F.R.D. 202, 203; Barron & Holtzoff, Federal Practice & Procedure, § 943; 5 Moore, Federal Practice, par. 42.-03. Determining the order of trial issues is a function reserved to the trial judge, Gross v. United States, 9 Cir., 1953, 201 F.2d 780, 784, and the granting of separate trials of distinct issues is within the sound discretion of the trial judge, Bowie v. Sorrell, 4 Cir., 1953, 209 F.2d 49, 51, 43 A.L.R.2d 781; see also Bedser v. Horton Motor Lines, 4 Cir., 1941, 122 F.2d 406, 407; Hall Laboratories v. National Aluminate Corp., D.C. D.Del.1951, 95 F.Supp. 323, 326; Eichinger v. Fireman's Fund Ins. Co., D.C. D.Neb.1957, 20 F.R.D. 204; Grissom v. Union Pac. R. Co., D.C.D.Colo.1953, 14 F.R.D. 263, 264; especially where such separation will tend to avoid prejudice, further convenience, promote justice and assure a fair and speedy trial to the litigants. 88 C.J.S. Trial § 9a. This has been noted even in cases holding that issues should not be tried piecemeal. Rickenbacher Transp., Inc. v. Pa. R. Co., D.C.S.D.N.Y.1942, 3 F.R.D. 202; Collins

v. Metro-Goldwyn Pictures Corp., 2 Cir., 1939, 106 F.2d 83, 85; Zenith Radio Corp. v. Radio Corp. of Am., D.C.D.Del. 1954, 106 F.Supp. 561, 576–577; Liquid Carbonic Corp. v. Goodyear Tire & R. Co., D.C.N.D.Ohio 1940, 38 F.Supp. 520, 527.

Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., clearly sanctions the rule. It provides:

"*Separate Trials.* The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issues or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

Rule 83 of the Federal Rules of Civil Procedure provides:

"*Rules by District Courts.* Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

The Federal Rules of Civil Procedure govern jury trials as well as non-jury trials. United States v. American Optical Co., D.C.S.D.N.Y.1942, 2 F.R.D. 534, 537. Under Rule 42(b) the court is empowered to isolate and try any issue in a case. Carr v. Beverly Hills Corp., 9 Cir., 1956, 237 F.2d 323, 325, reversed on other grounds 354 U.S. 917, 77 S.Ct. 1375, 1 L.Ed.2d 1433, rehearing denied 355 U.S. 852, 78 S.Ct. 7, 2 L.Ed.2d 60.

An early determination of the liability issue will dispose of the entire case in the 40 per cent of trials which result in "not-guilty" verdicts. (Delay in the Court, page 99.) In those cases it will save the 70 to 80 per cent of trial time generally consumed by the introduction of medical testimony, hospital records, X-rays, results of physical examinations and descriptions of treatment, all of which pertain to the nature and extent of the injuries and the amount of damages. Every judge of this Court has presided over many cases which were settled after convincing proof of liability had been introduced or when both parties realized the futility of further litigation. Many exaggerated *ad damnum* cases have been non-suited under such circumstances for a minimum settlement hardly sufficient to cover the costs.

The rule is limited to personal injury and other civil cases wherein the issue of liability is separate from and independent of the issue of damages. There are some cases in which damages must be proved in order to establish liability, as in anti-trust suits (see McClain v. Socony-Vacuum Oil Co., D.C.S.D.Mo.1950, 10 F.R.D. 261) and suits predicated upon fraud (see United States ex rel. Rodriguez v. Weekly Publications, Inc., D.C. S.D.N.Y.1949, 9 F.R.D. 179). There are also suits in which the law requires damages to be assessed in accordance with the degree of defendant's liability, as in cases under certain federal tort statutes and cases in states which apply the comparative negligence principle; and others in which damages must be assessed in accordance with the degree of defendant's culpability (Smyth Sales, Inc. v. Petroleum Heat & Power Co., Inc., 3 Cir., 1944, 141 F.2d 41. The rule therefore leaves the separation of issues wholly within the discretion of the trial judges.

The function of improving the procedural phase of the law for the achievement of justice is committed to the courts. Dean Wigmore insisted that "All rules of procedure in courts, not expressly or impliedly prescribed by the Constitution, fall under the judiciary power, for the purpose of making or changing them." (Wigmore, "Legislature Has No Power In Procedural

**588**

Field", 20 J.Am.Jud.Soc. 159, 160 (1936).)

Let us humanize and modernize our professional practice and raise its standards. We must fight with every resource at our command the scandalous practices which visit shame and disgrace upon our institution and which destroy the spirit of the litigants. The time for our court to act is now, before we fall even farther behind in our work. We owe it to our litigants to set the machinery in motion for the early disposition of lawsuits. If we ignore our responsibility, we admit professional bankruptcy.

The new rule is grounded on necessity and public welfare. The crucial problem which this rule attempts to alleviate demands the intervention of an intelligent, constructive and progressive judiciary. By having adopted this rule, our court has given real meaning to the wisdom of Attorney General William P. Rogers (1958 Proceedings of the Attorney General's Conference on Court Congestion, page 6):

> "In the years ahead I believe our profession must give greater emphasis to improving the administration of justice in order to provide the public with better service. Our profession has just one product: justice for people. We must expedite the administration of justice so that the right result is obtained at the right time for the person involved. There is a growing demand throughout the country that we work for this objective."

It was with a deep appreciation and understanding of its obligations that the United States District Court for the Northern District of Illinois promulgated Rule 21. This appears to be an ideal case in which to invoke it. Accordingly, an order has been entered discharging the jury which tried the liability issue and setting the cause over for trial on the damage portion to a later date, to suit the convenience and serve the best interests of the parties.