Argued January 9, reversed and remanded April 18, 1978

VANDER VEER, *Appellant/Cross-respondent,*
*v.*
TOYOTA MOTOR DISTRIBUTORS, INC. et al,
*Respondents/Cross-appellants.*
(No. 408-794, SC 24600)

VANDER VEER, *Appellant/Cross-respondent,*
*v.*
TOYOTA MOTOR DISTRIBUTORS, INC. et al,
*Respondents/Cross-appellants.*
(No. 408-795, SC 24600)

VANDER VEER, *Appellant/Cross-respondent,*
*v.*
TOYOTA MOTOR DISTRIBUTORS, INC. et al,
*Respondents/Cross-appellants.*
(No. 408-796, SC 24600)

VANDER VEER et ux,
*Appellants/Cross-respondents,*
*v.*
TOYOTA MOTOR DISTRIBUTORS, INC. et al,
*Respondents/Cross-appellants.*
(No. 408-797, SC 24600)
577 P2d 1343

[ 136-a ]

Donald A. Buss of Buss, Leichner & Barker, Portland, argued the cause and filed briefs for appellants/cross-respondents.

E. Richard Bodyfelt, Portland, argued the cause for respondents/cross-appellants Toyota Motor Distributors, Inc., Toyota Motor Sales U.S.A., Inc., and Toyota Motor Co., Ltd. With him on the brief were Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

William H. Morrison, Portland, argued the cause for respondent/cross-appellant Beaverton Toyota Co., Inc. With him on the brief were Morrison, Dunn, Cohen, Miller & Carney, Portland.

Before Denecke, Chief Justice, Holman, Howell, Bryson, Lent, and Linde, Justices, and Gillette, Justice Pro Tempore.

BRYSON, J.

**BRYSON, J.**

These four cases to recover damages for personal injuries were consolidated for trial on the single issue of liability. Plaintiffs appeal from a jury verdict and judgment in favor of defendants.

Plaintiffs brought four separate actions. Mr. and Mrs. Vander Veer brought a joint action for the loss of the services and companionship of their two children. Mrs. Vander Veer brought an action for her personal injuries, as did each of the children through their guardians ad litem. The four complaints alleged strict liability, for an unreasonably dangerous defect in the braking mechanism of the Toyota involved, as to all defendants. Each complaint also alleged negligence in a second count against defendant Beaverton Toyota Co.

On November 11, 1972, plaintiff Phyllis C. Vander Veer was driving the family's 1972 model Toyota Celica automobile with her children, Joseph B. Vander Veer, III, and Elizabeth Ann Vander Veer, as passengers in the rear seat. The accident occurred about 8:45 a.m. The weather was clear and sunny and the pavement was dry.

Mrs. Vander Veer was driving north in the right lane on S.W. Riverside Drive, a multi-lane highway in Multnomah County, between west Portland and Oswego, Oregon. She came to a point where the indicated speed changed from 45 miles per hour to 35 miles per hour. What happened next is in dispute. Mrs. Vander Veer testified that she was traveling at 45 miles per hour when she came to the 35 miles per hour zone so she applied the brakes to slow down. When she did so, the Toyota pulled to the right. She released the brakes and corrected the steering. She reapplied the brakes, and the car again pulled to the right, causing her to lose control of the car. The car traveled about 150 feet before crossing into the opposite (southerly) lane of traffic, where it collided head-on with another car.

[ 137 ]

Mrs. Vander Veer and the children were injured. At trial, plaintiffs offered expert testimony, hereinafter discussed in more detail, that the accident was caused by the car's defective left front brake.

Defendants, the manufacturers, distributors and seller of the car, offered evidence that the Toyota's left front brake was not defective. They produced several eyewitnesses, two of whom were in a car directly behind the Toyota. They testified that Mrs. Vander Veer turned her head to the right and raised her right hand "parallel" to her body concurrent to the time the car began to drift toward the guardrail on the right side of the road. They saw the brake lights flash as the car drifted toward the guardrail and just before plaintiff made a radical turn away from the guardrail. Three of the tires on the car were substantially under inflated. The fourth tire was destroyed in the accident. The car then fishtailed out of control, crossed into the oncoming lane, and collided with the other car. A Mr. and Mrs. Johnson, who were driving the car which was struck by plaintiffs' car, also testified that the plaintiffs' car turned to avoid hitting the guardrail, then fishtailed out of control.

Defendants moved to consolidate the four actions for trial. The presiding judge ordered
 "* * * that the following cases shall be and hereby are consolidated for joint trial on the questions of liability only. The question of damages, if any, will be segregated out for separate trial."

Contemplating an extended trial, May 17 to June 2, the court empaneled two alternate jurors. After both parties had rested and before submitting the case to the jury, the trial court and counsel faced a procedural problem. Under Oregon law, a civil jury may reach a verdict if nine of the twelve jurors agree to the verdict.[1] However, the same nine jurors must agree on

---

[1] Oregon Constitution, Art VII, § 5(7) (amended); ORS 17.105, 17.355(1).

all the issues involved in the case.[2] If the jury in this case were to reach a nine-person plurality verdict in favor of the plaintiffs, the parties believed that four separate trials, all to the same jury, would be required on the damages issues and the same nine jurors would have to agree on damages. After a lengthy discussion of the problems that might be confronted in continuing the trial of each case on damages in the event of a plaintiffs' verdict on liability, the court and counsel concluded that if one of the regular jurors became incapacitated there would be a mistrial. To avoid such a result, the trial court decided to send the two alternate jurors into the jury room to deliberate with the regular jurors and to vote on the liability issue. The following written interrogatory was submitted to all fourteen jurors:

> "At the time of its sale to the Vander Veers by Beaverton Toyota, did the vehicle contain a defect in its braking system which made it unreasonably dangerous to the user, which defect was a cause of the accident of November 11, 1972.

> (Answer yes or no)"

The interrogatory returned showed that nine of the regular jurors voted "no" for defendants. The two alternate jurors also voted "no" for the defendants. The alternate jurors' votes were not counted as part of the empaneled jurors' vote but they were recorded in case the alternates would later be needed to fill in for a regular juror. On the subsequent trials, the trial court apparently felt that the rule requiring the same nine jurors to agree on all issues would be satisfied if one of the nine regular jurors was replaced by an alternate juror who voted the same result on the issue of liability.

■ Plaintiffs first contend:

> "The court erred in permitting the two alternate jurors to accompany the jury to the jury room and in

---

[2] *Aronson v. Fagan,* 278 Or 135, 138, 562 P2d 974 (1977); *Munger v. S.I.A.C.,* 243 Or 419, 422, 414 P2d 328 (1966); *Shultz v. Monterey,* 232 Or 421, 424, 375 P2d 829 (1962); *Clark v. Strain et al,* 212 Or 357, 364, 319 P2d 940 (1958).

permitting the two alternate jurors to deliberate and vote on the issue of liability."

We agree and reverse. The trial court's action violated several statutes. ORS 17.105 provides in part:

"* * * The jury shall consist of 12 persons, unless the parties consent to a less number. * * *"

ORS 17.190 provides in part:

"(1) Notwithstanding ORS 17.105, in a civil case before the circuit court, if it is the opinion of the judge that the trial is likely to be a protracted one, the judge may direct that one or more additional jurors be drawn and seated as alternates.

"* * * * *.

"(3) An alternate juror shall replace any principal juror who becomes unable in the opinion of the judge, before the jury retires to consider its verdict, to perform his duty. At the time the jury retires to consider its verdict, the judge shall discharge any alternate juror who does not replace a principal juror.

"* * * * *."

Finally, ORS 17.305 provides in part:

"* * * The officer [in charge of the jury] shall, to the utmost of his ability, keep the jury together, separate from other persons * * *. He must not suffer any communication to be made to them, nor make any himself, unless by the order of the court, except to ask them if they have agreed upon their verdict * * *."

Defendants argue that plaintiffs' counsel consented to the above procedure of using fourteen jurors and that a sufficient or proper exception was not taken to the procedure. We have reviewed the entire colloquy between court and counsel and conclude that the plaintiffs objected to the procedure and the court granted to plaintiffs an exception. In fact, the court granted an exception to all parties. It would serve no purpose to set out in full the entire discussion between court and counsel on the problem. It suffices to say that the court was fully aware of the problems that confronted him because of the existing Oregon statutes and the decisions of this court, and he was

attempting to reach some decision to avert a mistrial and the loss of judicial time and expense to the parties. The record shows that the plaintiffs objected to the proposed procedure. During a recess, the plaintiffs and all of the defendants except Beaverton Toyota Co. reached a stipulation which provided in part as follows:

"[Counsel for appellants]: We would agree that, after the jury is instructed and retires to deliberate, the two alternates would be dismissed. The jury would then reach a verdict. And if they held for the plaintiffs in the case, we would commence the trial on damages. Even though one, two, or three of those jurors had voted against this interrogatory, those jurors could still take part in the deliberations on the damage issue and, as long as nine of the number agreed on a verdict in the damage issue, even though they had voted against the plaintiff on the interrogatory question, the verdict would stand. * * *"

However defendant Beaverton Toyota Co. would not agree to the stipulation, whereupon the court, on its own initiative, sent all fourteen jurors into the jury room to deliberate. The court also stated that whatever party received the bad result would have an assignment of error based on his ruling.

If the alternates are to be considered as jurors, then the procedure adopted by the trial court violated ORS 17.105, which provides for no more than twelve jurors. However, by ORS 17.190(3), the alternate jurors could not be considered as jurors. They should have been discharged at the time the jury retired to consider its verdict; in effect, the alternates became strangers to the jury at that time. Thus, allowing the alternates to deliberate with the jury violated ORS 17.305, which forbids the intrusion of strangers into the jury's deliberations.

To the contrary, defendants contend that ORS 17.190(3) requires discharging alternate jurors only

[ 141 ]

when the jury's deliberations would "necessarily determine the case." They cite no authority for this proposition. Their argument is based on efficiency—that the procedure followed was necessary to insure against a mistrial in case of a plaintiffs' verdict on liability and thereafter one of the regular jurors became incapacitated. However, this argument is based on the assumption that the *same* nine jurors must agree on all the elements of a case, even in a bifurcated case, and that if one of the nine is unable to serve in the later trial, the judge must grant a mistrial.[3]

Even if the efficiency argument were logically valid, it would not follow that the trial court's action was proper. ORS 17.190(3) provides, in clear terms, that an alternate may replace a regular juror only "before the jury retires to consider its verdict," and that at that time "the judge shall discharge any alternate juror who does not replace a principal juror." Mere considerations of efficiency do not permit us to misinterpret the clear wording of the statutes, even in a bifurcated case. The Oregon Legislature has taken one step forward in adopting ORS 11.050 and 11.060, but they have not made other necessary statutory changes to eliminate problems that are now plaguing the trial courts.

Although we reverse and remand for a new trial on the first assignment of error, we discuss other assignments of error that may arise on retrial.

---

[3]The federal practice allows different juries to decide the various issues in separate trials. *Arthur Young & Co. v. United States District Court,* 549 F2d 686, 692-93 (9th Cir 1977), *cert. denied* 98 S Ct 109 (1977); *Swofford v. B & W, Inc.,* 34 FRD 15, 20 (SD Tex 1963), *aff'd* 336 F2d 406 (5th Cir 1964), *cert. denied* 379 US 962 (1965); *O'Donnell v. Watson Bros. Transportation Company,* 183 F Supp 577, 585-86 (ND Ill 1960). *See also Hosie v. Chicago & North Western Railway Company,* 282 F2d 639 (7th Cir 1960); 9 Wright & Miller, Federal Practice and Procedure 302-04, § 2391 (1971) (saying that although it is the better practice to have the same jury decide all the issues, the answer to the question whether separate juries violate the seventh amendment of the U.S. Constitution "rather clearly must be in the negative").

Plaintiffs also contend that "[t]he court erred in consolidating the four lawsuits for trial and in segregating the question of liability from the question of damages for separate trial."

ORS 11.050 provides:

"Upon motion of any party, when more than one action or suit involving a common question of law or fact is pending before the court, the court may order a joint hearing or trial of any or all of the matters in issue in such actions of suits. Upon motion of any party, the court may order all such actions or suits consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

ORS 11.060 provides:

"Upon motion of any party, the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, crossclaim, counterclaim or of any separate issue or of any number of claims, crossclaims, counterclaims or issues."

Both statutes were copied from or are substantially the same as Rule 42(a), (b) of the Federal Rules of Civil Procedure. We acknowledged this fact in *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 356, 546 P2d 1065 (1976), and stated:

"In interpreting Rule 42 the federal courts have held: The trial court may consolidate for purposes of convenience and economy; the trial court cannot consolidate if consolidation will lead to confusion and prejudice. We adopt these general considerations. * * * Inasmuch as the trial court's rulings concern the administration of the business of the trial court, the appellate courts grant the trial courts a wide range of discretion in making such rulings. * * *"

In the recent case of *Black v. Funderburk,* 277 Or 157, 560 P2d 272 (1977), we reaffirmed our position stated in *Weiss.*

The federal courts have generally held that the trial court cannot consolidate if consolidation will lead to confusion and prejudice. 9 Wright & Miller, Federal

Practice and Procedure §§ 2381-2392 (1971). Plaintiffs argue that in this case the order of the presiding judge did lead to confusion and prejudice. They also argue that the presiding judge abused his discretion in ordering consolidation of the two minor plaintiffs' cases and Mrs. Vander Veer's case. The two minors were passengers. The evidence and defense of Mrs. Vander Veer's contributory negligence would not be admissible in the two minor passengers' cases. However, none of the defendants alleged contributory negligence on the part of Mrs. Vander Veer. The defendants only contended and argued that the car was not defective and that "driver error" was the sole cause of the accident.

■ We have examined the lengthy affidavit submitted by defendant Toyota's counsel in support of the motion for consolidation. It is not necessary to review all of the elements therein which support the presiding judge's decision for its order. We also note that plaintiffs submitted no affidavits in opposition. We conclude, from the record, that the court did not abuse its discretion, and we see no reason why the court's order would create confusion or prejudice to any of the parties litigant.

■ Plaintiffs also argue that defendants "made no showing of exceptional circumstances which would justify the separation order," relying principally on our language in *State ex rel Perry v. Sawyer,* 262 Or 610, 614, 500 P2d 1052 (1972). *Perry* was decided before the adoption of ORS 11.050 and 11.060. It is apparent that these statutes and the present Rule 42(a), (b) of the Federal Rules of Civil Procedure are less opposed to bifurcation than our statements in *State ex rel Perry v. Sawyer, supra. See* Note, Severance of Issues in Personal Injury Trials, 9 Will L J 138 (1973). The most important criterion, that liability be distinct from damages, is met. The other criteria are also met. Separation would expedite the litigation since an adverse jury verdict on liability would dispose

of the cases. It would make the damages litigation, if any were needed, less confusing because the injuries of the parties are not relevant to each other. Plaintiffs also assert that defendants did not specifically move for separate trials on liability and damages. We have no transcript of what occurred before the presiding judge at the time defendants' motion was argued. However, plaintiffs moved for reconsideration of the court's order, previously set forth, and acknowledged that they understood the full concept of the presiding judge's order and then contended only that "[i]f plaintiff's understanding of the Court's order is correct, then plaintiff moves the Court to reconsider and reverse its order because the order was not made pursuant to Oregon law, and because separation and consolidation of liability issues from damages violates Article 1, Section 17 of the Oregon Constitution and the 7th and 14th Amendments to the United States Constitution." Defendants' memorandum and affidavit in opposition to the motion for reconsideration discussed all elements of the court's order. Plaintiffs made no objection on the ground that defendants' motion did not specifically move for separate trials on liability and damages. Neither was such argument advanced before the trial court. We conclude that the parties were well aware of the contents of the court's order and made no objection as here asserted.

■■   Plaintiffs next assign as error the trial court's refusal to admit into evidence testimony with respect to the statements Mrs. Vander Veer made in the hospital waiting room after the accident.[4] Plaintiffs assert that these statements, although hearsay, were admissible as excited utterances. The trial court is given considerable leeway of decision in determining whether a statement is an excited utterance. *Zeller v.*

---

[4] Officer Stowers testified that Mrs. Vander Veer said that the car went out of control and that there was something wrong with the car. Mrs. Johnson testified: "She just kept repeating that, that she—the car went out of control and she didn't know what to do and she couldn't do anything about it. And she kept saying it over and over again."

*Dahl,* 262 Or 515, 518, 499 P2d 1316 (1972). Such a matter is "ordinarily a matter for determination by the trial judge." *Wright v. Swann,* 261 Or 440, 446, 493 P2d 148 (1972); *Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 564, 447 P2d 285 (1968). The trial court did not abuse its discretion by the ruling. The court could consider the fact that the "testimony was given by a party to the case," *Wright v. Swann, supra* at 446; and the lapse of time, which could have been as much as one hour. In addition, Mrs. Vander Veer testified at trial to the same facts as would have been brought out by her hearsay statements at the hospital. Under such circumstances, we have held that the trial court's action in excluding evidence is not reversible error. *Myers v. Cessna Aircraft,* 275 Or 501, 518-19, 553 P2d 355 (1976).

Plaintiffs' next three assignments of error concern the trial court's refusal to admit certain expert testimony and photographic evidence. The court refused to permit plaintiffs' expert, McGrew, to testify that he had found a hole or cut in the dust boot seal of the brake cylinder, or to permit him to testify that a ring clip for that brake was missing. The court also withdrew or refused to admit photographs showing these conditions. The reason was that plaintiffs had not shown that the brake components were in substantially the same condition when the expert inspected them as they were when the accident occurred.

Where a party seeks to introduce such substantive evidence, the proponent must show that the object is in substantially the same state it was in when the events in issue occurred. *White v. Keller et ux,* 188 Or 378, 388, 215 P2d 986 (1950), *overruled on other grounds in Johnson v. L. A.-Seattle Mtr. Exp., Inc.,* 222 Or 377, 383, 352 P2d 1091 (1960). We have referred to the proof required as proof of the chain of possession of the object. *Keller v. Coca Cola Bottling Co.,* 214 Or 654, 330 P2d 346 (1958). The exactness of proof of chain of possession rests in the sound discretion of the trial

court. *American Reciprocal Insurers v. Bessonette,* 241 Or 500, 505-06, 405 P2d 529 (1965). These same considerations should apply when, rather than introducing the object itself, the proponent seeks to introduce testimony relating to the object or photographs of the object.

■ We conclude that plaintiffs' showing as to the chain of possession of the brake components was lacking and the trial court acted within its discretion in excluding the expert's testimony and photographs concerning those components. This accident occurred on November 11, 1972. One of plaintiffs' expert witnesses, Joseph Van Gulick, examined the vehicle, including the brakes and brake fluid, which was removed, on November 15, 1972. Thereafter, a parade of experts examined, tested, disassembled and removed the left front brake components from the Vander Veer vehicle. Expert McGrew did not disassemble or photograph the brake components until August 27, 1975, some two years and nine months from the date of the accident. *See McPherson v. Cochran,* 243 Or 399, 403, 414 P2d 321 (1966). Our conclusion is strengthened by the fact that the trial court did admit evidence that the brake cylinder was contaminated with dust and debris, which is the condition that would be expected to occur if the ring clip and dust boot seal were defective or missing. Finally, we note that on remand it will again be within the trial court's discretion to admit or exclude the testimony, depending on the proof showing the chain of possession.

Plaintiffs' final assignment of error is that the trial court erred in granting defendant Beaverton Toyota's "motion to strike the negligence count from plaintiffs' complaint." In reviewing this assignment, we treat such a motion in the same manner that we consider a motion for an involuntary nonsuit. In *Bergholtz v. City*

*of Oregon City,* 116 Or 18, 22, 240 P 225 (1925), we said:

> "* * * A proper case for a directed verdict or a nonsuit is presented whenever the plaintiff has failed to establish by his evidence a *prima facie* case. Such action, however, is not proper when there are disputed facts to be settled by conflicting evidence. This court has often said that a motion to direct a verdict or grant a nonsuit is in the nature of a demurrer to the evidence and is governed by practically the same rules. Such a motion concedes as true the evidence adduced in behalf of the plaintiff, with all fair and reasonable intendments to be deduced therefrom. * * *"

Plaintiffs' allegation of negligence was only against defendant Beaverton Toyota:

> "That defendant, Beaverton Toyota Co., Inc., was negligent in that said defendant was aware of a defective left front braking system because of uneven pad wear and binding calipers and failed to remedy the condition by disassembly, inspection and replacement of the defective parts."

The only evidence on this issue was that Mr. Vander Veer had taken the car in for its regular 6,000 mile servicing and had complained of squeaking brakes. The evidence shows that it was not necessary for defendant Beaverton Toyota to disassemble the braking system to replace the brake pads. There was no evidence that squeaking brakes would prompt a reasonable repairman to disassemble and inspect the entire braking system; further, there was uncontradicted testimony that squeaking does not affect the braking system, but is only an annoyance to the driver. Both Mr. and Mrs. Vander Veer testified that they had experienced no malfunction of the brakes prior to the accident. They were happy and satisfied with the car, including the brakes, other than Mr. Vander Veer being annoyed by the squeak. To remove the squeak, only the wheel is removed, not the hub, and the braking system is not disassembled. Thus, no evidence was adduced to prove plaintiffs' allegation of negligence, and the court committed no error in

removing the negligence allegation and submitting the case to the jury on strict liability.

We turn next to defendant Beaverton Toyota's cross-appeal. Its sole contention is:

> "The trial court erred in denying defendants' motion for a directed verdict on the grounds that the evidence was insufficient to establish a manufacturer's defect in the braking system of the vehicle involved in the accident."

Defendants attack plaintiffs' expert McGrew's qualifications and further argue that his testimony was insufficient in any case to take the case to the jury. However, "[w]hether a witness is qualified as an expert is entrusted to the trial court's judgment * * *." *Weiss v. Northwest Accept. Corp., supra* at 357. The trial court did not abuse its discretion in determining McGrew to be qualified. McGrew testified that the braking system was defective in that dust and debris were present in the cylinder and that this defect had caused the accident. This testimony made a question for the jury to resolve on the issue of a defective brake, and the trial court did not err in denying the motion for a directed verdict.

Reversed and remanded for a new trial.