Argued March 29, reversed and remanded April 11, 1956

# CREDIT BUREAUS ADJUSTMENT DEPART-
# MENT *v.* COX BROTHERS

295 P. 2d 1107

*Morris Ullman,* Portland, and *H. W. Carter,* Salem, argued the cause and filed a brief for appellant.

*Otto R. Skopil, Jr.,* argued the cause for respondents. On the brief were Williams & Skopil, Salem.

Before LUSK, Presiding Justice, and TOOZE and BRAND, Justices.

LUSK, J.

This is an appeal by the plaintiff from a judgment of involuntary nonsuit in an action on an indebtedness.

Plaintiff sued as assignee of Northwest Oil Company, Incorporated, a corporation. The indebtedness was for gasoline sold by Northwest to the defendants, who were partners in the operation of a gasoline service station at Dallas, Oregon, which they leased from Northwest. On or about February 11, 1950, the defendants being no longer able to meet their obligations, the service station lease was turned over to a third party, certain credits on the defendants' account were given for equipment, etc., leaving a balance owing, as claimed by the plaintiff, of $1258.03, to recover which this action was brought.

As an affirmative defense the defendants alleged that prior to the commencement of the action Northwest agreed to accept in full satisfaction of the indebtedness the promissory notes of ten named individuals totalling some $1531, "and that the defendants thereupon caused the aforementioned individuals to execute notes in favor of Northwest Oil Company and delivered said promissory notes to Northwest Oil Company, and Northwest Oil Company accepted the same in full satisfaction of the claim sued upon herein." Certain evidence adduced in the plaintiff's case, both on direct and cross-examination, relative to the affirmative defense, is relied on by counsel for the defendants as establishing a novation as matter of law and requiring affirmance of the judgment. The evidence in this regard is as follows:

At the time that defendants surrendered their lease of the gasoline station and the final accounting was had the defendants turned over to E. D. Morrison, a representative of Northwest, the promissory notes in question. Eight of them are in evidence. One is dated January 1, 1950, and the others bear various dates in December, 1949. They are made payable to Northwest

Oil Co., Inc. The individuals who executed them were debtors of the defendants who had been unable to collect the indebtedness represented by the notes. In addition to these individuals both of the defendants signed some of the notes, and one of the defendants signed others. There is no evidence that Northwest caused the notes to be executed as alleged in the answer.

After receiving the notes E. D. Morrison delivered them to Northwest's office in Portland. The notes were not set up in any account on the books of the company, nor were the amounts thereof credited to the defendants' account. Northwest continued to send the defendants monthly statements of the account. Northwest made some efforts to collect the notes and received a few small payments which were credited on the defendants' account. Apparently, two of the notes were paid in full and returned to the makers and the defendants were given credit for such payments.

E. D. Morrison testified that the defendant William Cox said at the time the notes were delivered to him that they hoped "the people would pay them some day and settle their account," and "As fast as they could collect them they would send in the money and apply it to their account" with Northwest. Again, he testified that about a month later William Cox told him, referring to the makers of the notes, that "The men were hard to find and could not pay and it was going to take quite a while to get it." He denied more than once on cross-examination that the notes were accepted as payment, and testified that he did not pay much attention to the notes "because they were worthless to me, because they did not pay the bill, and all I thought about the whole thing was that they were made

out to help cause—make the customers pay him. They were used as a pressure.'' He further testified that the notes ''were given to me but they meant not a thing to me, because the understanding was that he still owed us a certain amount of money, whatever it was, and these were gotten to help force the customers to pay their bills maybe a little faster.'' He testified that Northwest turned the notes over to a collection agency.

H. F. Morrison, manager of Northwest and father of the witness E. D. Morrison, testified that the defendants asked Northwest to help them collect the notes, and that he wrote some letters asking for payment. He was asked on cross-examination, ''Didn't you accept those notes?'' and answered:

> ''I did not accept them, except with the understanding he accepted them on—the deal was: Cox went out and tried to collect from a lot of people and had no luck. The story that come to me, he went out on his own and got these people to sign these notes and give them to my son and maybe we could collect them and apply whatever—to his account. They were never considered whatever—.''

H. F. Morrison further testified that after the present action was commenced the defendant William Cox called him on the telephone and told him that ''the equipment had been attached and it was not his equipment, the attachment would not hold, and wanted me to call off the suit, said if I would call off the suit he would arrange to pay us.''

■ Novation may be defined as ''the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished.'' 66 CJS 681, Novation § 1a. An essential element of novation is

that there must be a release of all claim of liability against the original debtor, since it is possible for a creditor to accept a new debtor as an additional debtor still holding the original debtor liable. *Vawter v. Rogue Valley Can. Co.,* 124 Or 94, 99, 257 P 23, 262 P 851. The creditor's assent to hold the new debtor liable is immaterial unless there is assent to give up the original debtor. *Haines v. Pacific Bancorporation,* 146 Or 407, 413, 30 P2d 763. A novation is never presumed, and the burden is on the party asserting that a novation has taken place to establish all the essential elements by legal and sufficient evidence. 39 Am Jur 266, 272, Novation §§ 21, 33; 66 CJS 714, Novation § 26. The controlling element is the intention of the parties, and, unless there is a clear and definite intention on the part of all concerned to extinguish the old obligation by substituting the new one therefor, a novation is not effected. 66 CJS 703, Novation § 18e; 39 Am Jur 266, Novation § 21. And the mere fact that a creditor, with knowledge of the assumption by a third person of the debtor's obligation, consents thereto, does not amount to a release of the original debtor or an extinguishment of the original debt. *North Western Mutual Life Insurance Co. v. Eddleman,* 247 Ky 116, 56 SW2d 561, 87 ALR 276, and annotation at p 281. Nor was the acceptance by the creditor of the notes of the various individuals who owed money to the defendants of itself evidence of an agreement to discharge the defendants from their obligation. As stated in 66 CJS 703, Novation § 18:

"* * * in the absence of an agreement that the old obligation should be extinguished and a new one substituted, a novation will not be implied from the mere acceptance by the creditor of the obligation, or other security, of a third person.

Within the rule, the mere taking by the creditor of a note of a third person who has assumed the debt does not, in the absence of an agreement, operate as a novation releasing the old debtor, even though the creditor surrenders the original notes to such third persons, but such new obligation will be considered only as a conditional payment or a collateral security, or in the nature of a guaranty.''

See, also, to the same effect 46 CJ 608-609, Novation § 51.

Among numerous cases in which it has been held that the taking by the creditor of a note of a third person who has assumed the debt does not of itself operate as a novation releasing the old debtor, see *Smith v. Brown,* 12 La Ann 299; *Grant-Holub Co. v. Goodman,* 23 Oh App 540, 156 NE 151; *In re Daknke-Walker Milling Co.,* 1 F2d 404; *Lutz v. Williams,* 79 W Va 609, 91 SE 460, LRA 1918A 76; *Montgomery Bank & Trust Co. v. Jackson,* 190 Ala 411, 67 So 235; *Mount v. Dehaven,* 29 Ind App 127, 63 NE 330.

There is nothing contrary to the foregoing well-settled rules in the sections of the Restatement relied on by counsel for the defendants. See Restatement, Contracts §§ 424, 427, 428.

■■ In the instant case the evidence, so far from establishing as matter of law that Northwest, by taking the notes, released the defendants, indicates the contrary. Neither of the defendants testified, and it is possible, of course, that they would give a different version of the transaction. As the matter stood, however, at the close of plaintiff's case, Northwest simply accepted additional debtors without any intention on the part of anyone concerned to effect a novation. Certainly a jury could have so found from the evidence to which we have referred. It is to be remembered

that the plaintiff had no burden of proof except to show the existence of the indebtedness. This it could have done and rested, whereupon it would have been incumbent upon the defendants to establish the nova-·tion which they alleged. But the fact that the plaintiff, in its case in chief, opened up the subject of the giving of the notes did not have the effect of transferring the burden of proof of a novation from the defendants to the plaintiff.

Plaintiff made a prima facie case, and, as the evidence did not conclusively establish the affirmative defense, it was error to allow the motion for a nonsuit. The judgment is, therefore, reversed and the cause remanded for further proceedings in conformity to this opinion.