Argued and submitted November 5, 1993, reversed and remanded in part; otherwise
affirmed April 27, 1994

EAGLE INDUSTRIES, INC.,
an Oregon corporation,
James Tucker, and Linda Tucker,
*Respondents,*

*v.*

Roy B. THOMPSON,
*Appellant.*

(9011-07573; CA A74864)

873 P2d 479

James N. Westwood argued the cause for appellant. With him on the briefs was Miller, Nash, Wiener, Hager & Carlsen.

Kurt L. Maul argued the cause for respondents. With him on the brief was Bayless, Stiner, Reuppell & Lawrence.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant appeals from a judgment in favor of plaintiffs in this action arising from a dispute over defendant's attorney fees. Plaintiffs Linda and James Tucker own plaintiff Eagle Industries, Inc. (Eagle). Defendant is the attorney who represented plaintiffs in a lawsuit involving Toyoda Machinery USA, Inc. (Toyoda). Eagle was interested in bidding on government contracts for which it needed a specialized machine. Toyoda represented that it had a machine that would meet Eagle's needs, and Eagle purchased the machine. However, the machine did not perform as represented, and Eagle was unable to fulfill the government contract. As a result, it suffered severe financial problems.

Plaintiffs first met with defendant in October, 1987, to discuss their financial situation. At that time they provided defendant with information indicating possible fraud by Toyoda. When Toyoda filed an action against plaintiffs seeking damages for breach of contract and the return of the machine, defendant, on behalf of plaintiffs, filed an answer and counterclaims, including fraud. Defendant initially agreed to represent plaintiffs on an hourly basis. Although plaintiffs made some payments on defendant's billings, they were always in arrears.

Plaintiffs' contract with Toyoda required that a bond be posted in order to assert any counterclaims. In January, 1990, defendant scheduled a meeting with plaintiffs that plaintiffs believed was to discuss a hearing on the posting of a bond. At the meeting, without advance warning, defendant presented plaintiffs with a written attorney fee agreement (January agreement) in which plaintiffs were obligated to pay defendant his "usual hourly rate" plus 35 percent of any punitive damages awarded against Toyoda at trial.

Plaintiffs' position was that defendant told them that he needed extra incentive to continue his representation and that if they did not sign the agreement, he would resign. They contended that they were pressured into the agreement because of the pending hearing and their inability to find a new attorney who would work without a retainer. Defendant's version was that a bond hearing was not pending at that time, and that plaintiffs signed the agreement so that

they would not have to find another attorney who might require payment, a retainer or a less favorable contingency agreement. He contended that plaintiffs had made it clear that, without a judgment against Toyoda, they would not be able to pay him and would file for bankruptcy.

The Toyoda trial took place from March 15 through April 4, and the jury found in favor of plaintiffs, including a large punitive damage award against Toyoda. Settlement negotiations between plaintiffs and Toyoda began, and a meeting was scheduled between those parties for May 17, 1990. About 7:30 p.m. on May 16, plaintiffs sent a letter to defendant by facsimile transmission, which he saw the next morning. In it, plaintiffs expressed displeasure with the over-all amount of defendant's fee as a result of the January agreement. On May 17, during a three and one-half hour break in the negotiations with Toyoda, plaintiffs and defendant discussed the fee dispute and then signed an agreement (May agreement) that purportedly was to supersede the January agreement.

Plaintiffs' version was that they were pressured into the May agreement, because defendant told them he could not ethically continue the settlement discussions with Toyoda unless they settled the fee dispute. Defendant's position was that he adjusted the contingent fee to reflect the potential settlement of the case and reduced his hourly fees about $75,000 in exchange for plaintiffs' agreement not to dispute the fees further. Between May 17 and July, plaintiffs continued to object to the fees, both individually and through attorneys.

At the break in the negotiations, defendant prepared and filed an attorney's lien on the proceeds of the Toyoda settlement, which he served on Toyoda during the negotiations. Settlement was reached by the end of that day and was to be finalized on July 16. An agreement (the July agreement) between plaintiffs and Toyoda was executed on July 16. Because Toyoda was concerned about the attorney's lien, it required that defendant also be a named party to the July agreement. Part of the agreement dealt with the attorney's lien and the amounts and timing of payments to defendant that would release the lien. Plaintiffs and defendant signed the agreement, which includes the following paragraph:

"Entire Agreement. This Agreement and the Escrow Agreement attached as Exhibit 'A' constitute the entire understanding and agreement between the parties and supersedes all prior written and oral communications or understandings and agreements between the parties relating to the subject matter hereof."

The agreement also provided, *inter alia*, that part of the settlement award was to be paid to Chicago Title Insurance Company of Oregon, as escrow agent, for later distribution between Eagle and defendant. One payment was made to defendant from escrow before plaintiffs filed this action on November 28, 1990, seeking to rescind the January and May agreements.

Plaintiffs' second amended complaint included claims for rescission and declaratory relief, breach of fiduciary duty, and breach of contract. The rescission and fiduciary duty claims were first tried to the court (the equity phase). The court found for plaintiffs and ordered rescission of the January and May agreements. The breach of contract claim was tried to a jury, which also found for plaintiffs. Defendant appeals from the judgment, which included an award to plaintiffs of monies remaining in the escrow account.

The equity phase of the trial ended on November 6, 1991. On December 3, defendant moved for summary judgment on plaintiffs' breach of contract claim, on the ground that the July agreement, by operation of law, superseded the parties' original oral attorney fee agreement. The court denied the motion. Defendant first assigns error to the denial of that motion and to the denial of his corresponding motion to exclude evidence at variance with the July agreement during trial of the breach of contract claim.

Defendant relies on the above quoted paragraph from the July agreement, which he argues "defeats Plaintiffs and wins this case for Defendant." His position is that, whether called an integration or supersession, the July agreement is a written agreement that invalidates the prior inconsistent oral agreement:

"When parties to a contract execute a subsequent agreement respecting the same matter and the second contract is inconsistent in some of its terms with the first, the second agreement is deemed to have superseded the prior contract."

*Nicholson v. Hardwick,* 49 Or App 169, 175, 619 P2d 925 (1980), *rev den* 290 Or 652 (1981).

Plaintiffs, relying on *Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 852 P2d 960 (1993), *rev den* 318 Or 459 (1994), argue that whether a writing is an integration depends on the parties' intent and that the court did not err in hearing evidence as to that intent. They contend that the evidence was clear that neither plaintiffs nor defendant intended that the July agreement would resolve their ongoing fee dispute.[1]

Defendant responds that *Wescold* is inapplicable, because the agreement there contained no integration clause and evidence of the parties' intent applies only to the "initial factfinding role of a court in deciding whether an agreement that contains no integration clause is intended to be an integration." He insists that here the *"July Agreement is completely integrated because it says it is,"* (emphasis defendant's), and no evidence at variance with the agreement was admissible.

We reject defendant's position that we may consider *only* the language of the integration paragraph. As defendant himself has noted, integration or supersession is dependent on identity of subject matter. Defendant argues that the subject of the oral agreement was payment of defendant's fees for representing plaintiffs in the Toyoda case and that "the relevant part" of the July agreement was also the amount and payment of defendant's fees. Therefore, he contends, the subject matter of the agreements is the same.

We do not agree. It is evident on the face of the July agreement that the parties and the subject matter are not the "same" in the July and oral agreements. The oral agreement was between plaintiffs and defendant; the July agreement

---

[1] Plaintiffs argued below and reassert on appeal that defendant waived the "belated integration defense" because he did not put the July agreement at issue under his third amended answer, and the defense was never raised during the equity phase. However, the trial court did not rule on that argument. Instead, it addressed defendant's integration argument. Because we conclude that the trial court did not err in its ruling, we do not address plaintiff's procedural argument.

We also reject plaintiff's position that the denial of defendant's motion for summary judgment is not reviewable. *See Payless Drug Store v. Brown,* 300 Or 243, 246, 708 P2d 1143 (1985).

inserts Toyoda as an additional party. The oral agreement was for the amount to be charged by defendant for representation of plaintiffs in the Toyoda case; the July agreement inserts the existence of an enforceable attorney lien against Eagle and Toyoda and payment of amounts in relation to that lien.

■ In *Wescold, Inc. v. Logan International, Ltd., supra,* 120 Or App at 519, we set out the analysis for deciding whether terms of a contract are integrated:

> "First, the court must consider all the relevant circumstances to resolve preliminary issues of historical fact. Simply put, the court must decide what happened. * * * Second, the court determines the legal effects of those facts." (Citations omitted.)

The trial court did not err in hearing evidence as to the parties' intent nor in its determination that the July agreement did not supersede the oral agreement. The historical facts show that, although the amount of attorney fees is the same in the May and July agreements, plaintiffs never stopped disputing that amount. The facts show that it was Toyoda, not plaintiffs, that insisted on including defendant as a party in the July agreement because of its concern with defendant's attorney lien. Defendant admitted that plaintiffs did not want him included in the July agreement and that he was a named party only at Toyoda's insistence. The July agreement recites that there is "an existing lien for attorney's fees enforceable against both Toyoda and Eagle" and provides for amounts to be paid, some from escrow, to obtain releases of the lien. The historical facts show that, as to defendant, the July agreement is a distribution agreement. They do not support the conclusion that the July agreement was a settlement between plaintiffs and defendant of the attorney fee dispute. The July agreement did not supersede the oral agreement.

Because the July agreement did not supersede the oral agreement, the trial court also did not err in denying defendant's motion to exclude evidence at variance with the July agreement in the breach of contract trial. The only theory to justify excluding that evidence would be supersession.

Defendant assigns error to the court's allowing plaintiffs' motion in limine to exclude evidence of the July agreement from the breach of contract trial. The court concluded that evidence of the source and amount of payments to defendant was not central to the jury's determination of a reasonable attorney fee under the oral agreement. We review the court's ruling excluding evidence on that ground for an abuse of discretion. *Vander Veer v. Toyota Motor Distributors*, 282 Or 135, 146, 577 P2d 1343 (1978).

Defendant argues that the July agreement was "a pleaded and integral" part of his defense to the oral contract claim, and, therefore, the trial court could not exclude the evidence. In his third amended answer, defendant alleged, as part of his affirmative defense of "Accord and Satisfaction," that "plaintiffs have accepted money under the agreement." He argues that "the agreement" could only refer to the July agreement, because the hourly fee and formula for calculating the contingent portion of the fees were identical in the May and July agreements.

The trial court did not err in concluding that defendant had not pled the July agreement as part of the breach of contract claim. The allegations of defendant's affirmative defense are directed to the January and May agreements. He alleged that, "[a]s a compromise and settlement" of the fee dispute, the parties "entered into the second written fee agreement [the May agreement] as an accord." He alleged the terms of "the accord in satisfaction of plaintiffs' complaints and dispute with the first written fee agreement [the January agreement]." He then alleged that "plaintiffs have accepted money under the agreement." In context, "the agreement" refers to the May agreement. However, even if the "agreement" referred to the July agreement, the allegations do not plead a defense to the oral contract. The trial court did not abuse its discretion in excluding the evidence.

After the trial court had decided the equity phase of the trial, defendant moved to file a fourth amended answer to allege a paragraph adding that "[t]he parties have subsequently modified the oral agreement and memorialized it in an agreement dated July 16, 1990." Defendant assigns error to the court's denial of that motion. We review for an abuse of

discretion. *Hall v. Fox*, 106 Or App 377, 380, 808 P2d 99 (1991).

■　Defendant contends that, by the time of the breach of contract trial, the July agreement had "loomed large"[2] and, thus, his amendment would not have enlarged the issues or added a claim. However, defendant's motion to amend was made about two months after the equity phase of the trial began. During that time, defendant had not pled the theory alleged in the amendment nor had there been evidence in the equity phase on defendant's theory. Justice did not require an amendment to conform the pleadings to the evidence. ORCP 23A; *see Morrill v. Rountree*, 242 Or 320, 325, 408 P2d 932 (1966). The trial court did not abuse its discretion in holding that defendant's motion to file a fourth amended complaint was untimely and would unduly prejudice plaintiffs.

■■　Defendant assigns error to the trial court's determination to "void" the escrow portion of the July agreement requiring that funds were to be paid to defendant from the escrow established pursuant to the settlement of the Toyoda case. Plaintiffs are correct that, when an equity court has acquired jurisdiction, it retains such jurisdiction for all purposes connected with the subject matter in dispute and may administer complete relief if authorized by the pleadings. *Weinke v. Majeske*, 163 Or 483, 487, 97 P2d 179 (1940). It may do so by such means as requiring specific performance or executing a deed. *See Everson et al. v. Haun et al.*, 106 Or 612, 213 P 135 (1923). The difficulty with those generalizations here, however, is that the pleadings and record do not show that the court's authority extended to the escrow agreement.

■　Defendant denied plaintiffs' allegation that they were the beneficiaries of the escrow agreement, and the court specifically did not make findings regarding that agreement. Moreover, the escrow agreement involved the rights and obligations of parties to the agreement who were not before the court in this case. Although plaintiffs are entitled to a judgment that includes the escrow amount, defendant is

---

[2] Defendant contends that, before the equity phase of the trial, he had explicitly argued in his trial memorandum that the "satisfaction to this accord was accomplished by execution of the July 1990 settlement agreement." We do not agree that that reference in a trial memorandum placed the July agreement in issue. *See Gibson Bowles, Inc. v. Montgomery*, 51 Or App 313, 319, 625 P2d 670 (1981).

entitled to vacation of the declaration that plaintiffs are owners of and shall recover the sum of $129,400 designated for payment to defendant under the escrow agreement.

■ Defendant next assigns error to the trial court's acceptance of an "inconsistent verdict" on the breach of contract claim, which defendant contends was based on the amount of fees that defendant charged.[3] In answer to the interrogatory as to whether defendant had breached the oral agreement, the jury wrote, "Yes." In response to the interrogatory as to how much defendant was entitled to be paid under the oral agreement, the jury wrote, "$201,348.90." Defendant argues that plaintiffs' evidence, however, showed that defendant's charges were only $186,889.77. Thus, he contends, the verdict form allowed the jury to find that he had breached the oral agreement even though it concluded that he was entitled to receive more than he actually billed. Consequently, defendant argues, there were no damages and, therefore, no breach of contract.[4]

Defendant calculates the amount of his charges by taking the original amount of his billings and subtracting deletions that he later allowed on the amount billed. We agree with plaintiffs that the jury was not obliged to accept defendant's argument that any overcharge originally made was cured by a later reduction in fees. The court did not err in accepting the verdict.

Defendant's final assignment of error is that the trial court erred in rescinding the January and May agreements, because there was insufficient evidence to support plaintiffs' claim of duress. The trial court ruled that those agreements should be rescinded, not only because defendant had exerted undue influence and duress in obtaining plaintiffs' signatures on them, but also because he had breached his fiduciary duty. The court found:

---

[3] Plaintiffs alleged that the sums billed were excessive but did not rely only on the billings. They also alleged, and testified, that defendant promised that the attorney fees would not exceed $125,000. The jury obviously rejected plaintiffs' position.

[4] Defendant objected to the verdict form and moved for a judgment notwithstanding the verdict and a new trial, which the court denied.

"It is my opinion that the two agreements should be rescinded for the following reasons. It is true that an attorney can withdraw from a case at any time. It's apparent that a conflict of interest has arisen. Failure to pay a fee in a timely fashion would be such a conflict. But it has to be based on whether or not [the attorney's withdrawal] comes at a, quote, critical stage of the proceedings."

We review *de novo*. Because of the special relationship between an attorney and client, a contract entered into after the start of the relationship will be closely scrutinized. *Sabin v. Terrall*, 186 Or 238, 250, 206 P2d 100 (1949). If the client challenges the fairness of the contract, the attorney has the burden of showing that there was no undue influence and that the attorney gave the client the information and advice that would have been required if the attorney had had no personal interest in the contract. *Toomey v. Moore et ux*, 213 Or 422, 430, 325 P2d 805 (1958); *Kirchoff v. Bernstein*, 92 Or 378, 387, 181 P 746 (1919).[5]

The record shows that defendant had always been aware of plaintiffs' financial difficulties but had never insisted on their keeping his billings current. In late August or early September before the January agreement, more than two years after he had started representing plaintiffs, defendant wanted to change the terms of his contract and suggested a contingency fee. However, defendant did not provide plaintiffs, in a timely fashion or manner, with the required advice and information about the details or possible consequences of any changes. Rather, the fee issue was left unresolved until, in an increasingly adversarial atmosphere, defendant presented the agreements in what the trial court

---

[5] Factors that may be considered in determining the validity of the contract are listed in *Annot.*, 13 ALR3d 701, 711 (1967). They include

"whether the attorney acted in good faith without exerting any undue influence, and made a full disclosure of all relevant facts with such advice as a disinterested attorney could be expected to give; whether the client received independent advice from a disinterested attorney * * * and whether the amount of compensation agreed upon is reasonable or excessive. An agreement increasing compensation * * * will be refused enforcement if the increase in compensation is not supported by new consideration.

"Failure to allow the client time to consider the agreement before executing it, or threatening to withdraw from the case, * * * especially if this takes place at a crucial stage in the proceedings, is almost certain to result in a finding of undue influence." (Footnotes omitted.)

correctly characterized as "critical stages." The timing of each agreement did not permit plaintiffs an opportunity to engage in meaningful negotiations. We concur in the trial court's conclusion that the January and May agreements should be rescinded.

Because plaintiffs prevail on all issues except for the release of the escrow funds, we designate plaintiffs as the prevailing party. ORS 20.015; *Robinowitz v. Pozzi*, 127 Or App 464, 872 P2d 993 (1994).

Reversed and remanded as to declaration that plaintiffs are the owners of and shall recover the sum of $129,400 held by Chicago Title Insurance Company of Oregon (that sum previously designated for payment to defendant on January 16, 1992); otherwise affirmed.