Argued and submitted May 4, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed, and case remanded to circuit court for entry of judgment August 3, reconsideration denied October 17, 1995

EAGLE INDUSTRIES, INC.,
an Oregon corporation,
James Tucker, and Linda Tucker,
*Respondents on Review,*

*v.*

Roy B. THOMPSON,
*Petitioner on Review.*

(CC 9011-07573; CA A74864; SC S41463)

900 P2d 475

James N. Westwood, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause and filed the briefs for petitioner on review.

Kurt L. Maul, of Bayless, Stiner, Rueppell & Lawrence, Portland, argued the cause and filed the brief for respondents on review.

Thomas W. Brown, of Cosgrave, Vergeer & Kester, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Cecil B. Strange, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

FADELEY, J.

## FADELEY, J.

This case turns on the meaning of a provision in a contract among three parties entered into in July of 1990. The contract settled a previous court case between the Tuckers and Toyoda, after trial and verdict, but before judgment. Thompson had been the Tuckers' lawyer in that earlier court case. He obtained the verdict in their favor. At their request, he negotiated the settlement agreement after verdict. However, even before trial and verdict, a dispute arose between Thompson and the Tuckers over Thompson's fees. That dispute continues today, and is the basis for the present breach of contract action brought by the Tuckers against Thompson.

Although this case is separate from the one in which the verdict was entered, where Thompson represented the Tuckers against Toyoda, background facts from that case are necessary to an understanding of the present breach of contract claim. In the previous case, Toyoda as plaintiff claimed a $340,000 balance due by the Tuckers on the purchase price of a construction machine from Toyoda and sought a court order returning the machine to Toyoda.[1]

The Tuckers hired Thompson to defend them in that action and eventually to bring counterclaims for fraud and for damages for losses suffered because the machine did not perform as represented. The initial fee agreement between lawyer and client was based on a stated hourly rate of charge for the lawyer's time and that of his assistants. That hourly rate was changed and, thereafter, in January of the year of the Toyoda case trial, a written fee agreement was signed. That agreement provided that Thompson would receive a percentage of any punitive damages awarded, in addition to hourly fees. In April, a trial to a jury was completed. Although the jury awarded Toyoda a substantial sum as the unpaid portion of the machine's purchase price, it also awarded the Tuckers on their counterclaims $179,832 in special damages and $1.5 million in punitive damages. After the verdict, but before any judgment was entered, the parties negotiated

---

[1] The previous court case was an action by Toyoda against the Tuckers and their wholly owned company, Eagle Industries, Inc. The Tuckers were sole owners and guarantors of Eagle. When this opinion refers to "the Tuckers," the term is meant to include them individually and their company, Eagle.

toward a settlement of the case that would provide Toyoda with an order dismissing the case rather than entry of any judgment against it. During the time of those negotiations, the Tuckers told Thompson of their continuing dissatisfaction with his charges. He proposed and they signed, in May, a new written fee agreement which continued the provision that Thompson would receive a percentage of the punitive damages. Thompson also filed a statutory attorney's lien against both Toyoda and the Tuckers on May 17.[2]

On July 16, Toyoda, the Tuckers, and Thompson entered into a "Settlement Agreement," incorporating an escrow agreement, that canceled any debt due on the machine and transferred clear title to it to the Tuckers. The agreement also provided that a stipulated dismissal of the Toyoda case, vacating the verdict, would be ordered. The settlement agreement promised that Toyoda would pay, in various amounts at various times, a total of $1 million plus interest, in separate payments to the Tuckers and to Thompson directly, who was to release his attorney's lien pro rata as paid.

The July settlement agreement recited in a "whereas" clause that

"the parties have resolved and compromised the issues raised in [the case started by Toyoda against the Tuckers] and any and all other claims which the parties may have against each other and desire to set forth such agreement and compromise in writing."

Paragraph 10 of that agreement relates to Thompson's attorney's lien and provides, *inter alia*, that

"upon final payment to Roy B. Thompson, * * *, at that time any and all obligations due or owing from Toyoda or Eagle or Escrow agent * * * shall be extinguished and terminated."

Both the "Settlement Agreement" and escrow agreement expressly deal with the subject of punitive damages, and the possibility that the state might claim a portion of the punitive damages under ORS 18.540.

---

[2] Notwithstanding the attorney fee dispute, the Tuckers, who were represented by independent counsel as to that dispute, continued to request Thompson to negotiate a settlement with Toyoda.

The July agreement also contained the provision on which our decision in this case turns. Paragraph 11(c) of the July agreement provides:

> "This Agreement and the Escrow Agreement attached as Exhibit 'A' constitute the entire understanding and agreement between the parties and supersede all prior written and oral communications or understandings and agreements between the parties relating to the subject matter hereof."

Our discussion of the prior Toyoda case is coming to a close. We return to a description of the present case where the Tuckers seek breach of contract damages, in the words of the prayer of their complaint, "for Thompson's excessive charges and billings to" the Tuckers. The Tuckers' claim is alleged under the initial attorney fee contracts and hourly charge agreements. It is important to note that no claim is made by the Tuckers based on the July three-party agreement or on any of the negotiations after verdict leading up to it. Indeed, the Tuckers moved successfully to exclude all evidence of, or about, the July agreement in the present case on the ground that it was not relevant to their claims of breach of earlier contracts. The Tuckers make no claim based on negotiations leading up to the July agreement at all, let alone one which seeks to "alter its terms." Only Thompson and the Tuckers are parties to the present case.

Relying on the paragraph quoted above in the July agreement, Thompson moved for partial summary judgment concerning the Tuckers' breach of contract claim. Thompson's motion for partial summary judgment included the following statements:

> "The [July] settlement agreement, including its terms for payment to the defendant, supersedes all prior oral and written agreements between its parties, some of whom are the plaintiffs and the defendant herein. Since the settlement agreement is under its own terms integrated, the prior fee agreements are discharged and of no effect, while the settlement agreement remains in effect."

Thompson's memorandum supporting that motion argued that any prior agreement was "discharged" by the July agreement and that the July "agreement is the only valid and binding agreement between the parties."

The trial court denied the motion. Thereafter, the breach of contract claim was tried to a jury. Evidence of the July agreement was excluded from that trial on the Tuckers' motion. The jury returned a verdict that generally favored the Tuckers and against their former lawyer, Thompson.

Thompson assigns as error the denial of his motion for summary judgment and argues on appeal that there was no question of fact to submit to a jury because, as a matter of law, the July agreement superseded the prior attorney fee contracts, on which alone the jury acted. He argues that the July agreement is a novation, discharging any prior contracts. Thompson also argues that the July agreement was fully integrated and, therefore, under the parol evidence rule, no evidence inconsistent with its terms could be admissible.[3]

In rejecting Thompson's novation argument, the Court of Appeals noted that the initial fee agreement was between only two parties and that the July agreement added a third party and, thus, its "subject matter" was not the same. As to the fact that the *subject* of both agreements includes the amount of attorney fees to be paid Thompson for his representation of the Tuckers in the Toyoda case, the Court of Appeals responded only that "the July agreement inserts the existence of an enforceable attorney lien against [the Tuckers] and Toyoda and payment of amounts in relation to that lien." *Eagle Industries, Inc. v. Thompson*, 127 Or App 595, 601, 873 P2d 479 (1994).

The Court of Appeals held that: "[t]he July agreement did not supersede the [prior] oral agreement." *Ibid.* The Court of Appeals supported that conclusion by indicating that the "historical facts" show that the July agreement is but a "distribution" agreement and does not represent any settlement of the attorney fee dispute between the Tuckers and Thompson. *Ibid.* The Court of Appeals opinion supports that proposition by a further recitation indicating that Toyoda, not the Tuckers, insisted on including Thompson as a party to

---

[3] Thompson also assigns as error the separate ruling of the trial court that excluded any evidence of the July agreement from the jury. That claimed error becomes important only if earlier fee contracts that were the subject of the breach of contract claim survive the July agreement and its "supersede" provision as a matter of law. Thompson also urged other assignments of error. Because of our disposition of this case, we do not consider them further.

the July agreement, and that Toyoda did so because of its concern about Thompson's attorney's lien. *Id.* at 598, 601.

The Court of Appeals then held that the existence of the July agreement and its provisions did not prevent the admission of evidence at variance with its terms in the breach of contract trial on different, earlier contracts. *Id.* at 601. On the same basis, the Court of Appeals held that no error was committed by excluding *all* evidence of the July agreement, because the breach of contract claim was not based on that agreement. *Id.* at 602.

The Court of Appeals next vacated the trial court's order voiding a portion of the escrow agreement and declaring that the Tuckers are owners of the money that was then in the hands of the escrow agent, but designated by the escrow agreement for payment to Thompson. That court's reasons for reversing the trial court included that Toyoda was not a party to the present legal action, out of which the order voiding part of the escrow was entered. Based on the fact that Toyoda was a party to the escrow but not to the current case, the Court of Appeals understood that the trial court had no jurisdiction in this case to make the orders voiding the escrow and changing ownership of money held in it contrary to the provisions of the July three-party agreements.[4] *Id.* at 603.

■   We allowed Thompson's petition for review. Simply put, the issue is whether the July agreement superseded as a matter of law the earlier fee agreements on which the breach of contract claim was based. If so, the trial court erred by denying partial summary judgment and erred further by submitting the claim to a jury.

Because this case arises on an ORCP 47 motion for summary judgment, the moving party (here, Thompson) bears the burden of convincing the court that there is no genuine issue as to any material facts. Where the moving party is otherwise entitled under ORCP 47 C, however, summary judgment "shall be rendered" unless there is a

---

[4] The Tuckers do not petition this court for review of the Court of Appeals' decision overturning the trial court's order voiding the escrow but do ask that all issues below remain in the case. We do not disturb the Court of Appeals escrow decision. It remains the law of this case.

relevant dispute about "any material fact."[5] *Fields v. Jantec, Inc.*, 317 Or 432, 437, 857 P2d 95 (1993); *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993); *see Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978) (stating that principle under former, identical statute, ORS 18.105(3) (1977)).

Thompson, relying on paragraph 11(c) of the July agreement, contends that that provision entitles him to summary judgment against a breach of contract claim on any earlier contract and that such contract has been discharged as a matter of law. The Tuckers, on the other hand, contend that there is a dispute of facts surrounding the meaning or intention of the parties to that July contract with regard to the provision relied on by Thompson. The Tuckers also argue that there is a dispute of material facts concerning the earlier January and May fee contracts, an argument that is relevant only if those earlier contracts survive the July agreement.

When considering a written contractual provision, the court's first inquiry is what the words of the contract say, not what the parties say about it. To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. *New Zealand Ins. v. Griffith Rubber*, 270 Or 71, 75, 526 P2d 567 (1974); *Devereaux v. Cockerline*, 179 Or 229, 240, 170 P2d 727 (1946); *Arment v. Yamhill County*, 28 Or 474, 479, 43 P 653 (1896). The meaning of disputed text in that context is then determined. *Ramsay Signs, Inc. v. Dyck*, 215 Or 653, 657, 337 P2d 309 (1959). In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. *OSEA v. Rainier School Dist. 13*, 311 Or 188, 194, 808 P2d 83 (1991). In the absence of an ambiguity, the court construes the words of a contract as a matter of law. *May v. Chicago Ins. Co.*, 260 Or 285, 292, 490 P2d 150 (1971). That case states:

---

[5] ORCP 47 C requires in part that

"[t]he judgment sought shall be rendered forthwith if [the materials before the judge] show that there is no genuine issue *as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.)

As we have held, the party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. ORCP 47 D; *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).

"As a general rule, the construction of a contract is a question for the court and is treated as a matter of law." *Ibid.*

The July agreement in part provides:

"This Agreement and the Escrow Agreement * * * supersede all prior written and oral communications or understandings and agreements between the parties relating to the subject matter hereof."

The word "supersedes" is not ambiguous. The Court of Appeals erred in reaching a contrary conclusion.

The phrase "subject matter hereof," which "supersedes all prior * * * agreements" on the subject, likewise is not ambiguous. It refers to the written document in which the phrase appears and signals that the document is to announce those items that are its subject. Considering that bit of text in the context of the entire written agreement in which it appears makes clear that the subject is settlement of all rights and duties arising from the legal action and verdict against Toyoda, specifically including Thompson's unpaid legal fees and the statutory attorney's lien related to those fees.

The Court of Appeals erred when it concluded, contrary to the provisions included in the contract, that the contract was but a "distribution" agreement. Rights and duties were changed and transferred by it. Obligations were transferred and extinguished by it. The July contract, by its terms, replaces any previous attorney fee agreements between the parties related to the Toyoda case. It expressly deals with, *inter alia*, the subject of Thompson's fees and the attorney's lien. It substitutes for and supplants prior contracts on the subject.[6]

We turn to a review of the terms of the agreement, as pertinent.

---

[6] The highest courts of other states have taken the same view: that "supersede" is not ambiguous and that its use in the contract context results in replacement of the prior contract that is "superseded." *Dick v. King*, 73 Mt 456, 236 P 1093 (1925) (holding that the prior contract provided no basis for a counterclaim because it had been set aside and replaced by the later contract which stated that it superseded the prior contract); *Hale v. Dolly Varden Lumber Co.*, 230 P2d 841, 846, Cal Ct App (1951), *aff'd Hale v. Bohannon*, 38 C2d 458, 241 P2d 4 (1952) (prior agreement, if proved, would have no effect because of clause in later written agreement providing, *inter alia*: "This instrument contains the entire agreement between the parties hereto and shall supersede and control any and all prior understandings").

There was no prior compromise settlement agreement between Toyoda and the Tuckers. In context, the words "supersede all prior written * * * understandings and agreements between the parties" by their plain meaning would include the prior attorney fee agreements between the Tuckers and Thompson. When the Tuckers signed the July three-party agreement, they promised to be bound by it. That agreement provides for a release of the attorney's lien, as against the Tuckers, when Toyoda pays Thompson the amounts specified in the July agreement. The escrow agreement also provides for Toyoda's payment of Thompson's fees on behalf of the Tuckers. It recites that "the parties are all willing to enter into this Escrow Agreement." It names the Tuckers and Thompson as individual "parties," in addition to Toyoda. And it provides, in paragraph 5, that "this agreement shall be binding and conclusive upon, and inure to the benefit of the respective parties." The Tuckers also signed that agreement. Both the July settlement agreement and the escrow agreement note one unsettled contingency, *viz.* — whether the state would claim a part of the "punitive damages" under ORS 18.540. Significantly, the agreement includes no hint of any other unsettled contingency or unresolved claim of any signatory.

It is clear that the July agreement supersedes the prior fee agreements. However, the question of the legal effect of that supersession remains. Does the July agreement "discharge" the prior fee agreement as a matter of law, as Thompson argued in support of his motion for summary judgment? Or, may the Tuckers still claim a breach of an earlier fee agreement where, as here, their claim is not in any way based on the three-party July agreement, its meaning, or the negotiations leading up to it? We think that the earlier fee agreements were discharged by the July agreement, which we interpret to be a novation. It substituted for all earlier fee agreements.

Before considering the relevant law, a brief discussion of terminology employed by some of the authorities concerning novations is in order. With regard to the release of his attorney's lien in return for payments to him under the July agreement, Thompson is a "creditor" and may also be called an "obligee." The Tuckers are "debtors" and may also

be called "obligors." Under the July agreement, Toyoda, who was already a debtor to the Tuckers, became a "debtor" and "obligor" to Thompson. Thompson also became a "creditor" and "obligee" of Toyoda, as to Toyoda's promise to pay the specified amount of fees.[7] Toyoda, as debtor of the Tuckers, promised to pay on their behalf the attorneys fee debt of the Tuckers to Thompson, thereby paying to that extent, Toyoda's obligation to the Tuckers by paying the Tucker's obligation to Thompson.

In *Dorsey et ux v. Tisby et ux*, 192 Or 163, 173, 234 P2d 557 (1951), the court stated:

"A substituted contract, or a novation, in which the sole participants are the parties to the original agreement or obligation not only creates a new agreement or obligation, but also rescinds the former one. It is not unlike the emergence of a butterfly from a chrysalis. It is the two-fold character of the transaction, that is, the rescission and substitution, which constitutes the suppor[t]ing consideration for both phases of the transaction. In the present instance, the earnest money receipt was executory when the substituted contract was signed January 19, 1949. It is manifest, as we have said, that it was the intention of the parties to substitute the new, that is, the substituted, contract for the earnest money receipt and in so doing terminate the covenants of the latter."

Later, after also considering whether the parol evidence rule had any effect and whether there was no consideration for the substituted contract, the court held:

"We conclude from the foregoing that the earnest money receipt cannot be regarded as evidence of the agreement of the parties. It was *superseded* January 19, 1949, when the parties signed the *substituted* contract." *Id.* at 179 (emphasis added).

---

[7] Of course, the Tuckers became creditors and obligees of Toyoda under their verdict and the July "Settlement Agreement," which established a different amount of debt than had the verdict. They gave up their rights to enter judgment on the verdict and collect $1.5 million in return for the substituted rights created by the July agreement to the transfer of title to the machine free of any further purchase price payment obligation and to their share of the $1 million settlement as specified in the July agreement. They were also relieved of several previous obligations by the July agreement. The Tuckers were no longer required to pay for the machine or for their trial lawyer. Toyoda took those obligations from the Tuckers and Thompson assented.

In *Credit Bureaus v. Cox Brothers*, 207 Or 253, 257-58, 295 P2d 1107 (1956), this court summarized the law relating to novation contracts. The court adopted as a definition of a novation

" '[t]he substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. 66 CJS 681, Novation § 1a.' " *Id.* at 257.

The court stated that an essential element of novation is that there must be a release by the creditor of all claim of liability against the original debtor. The *Cox* court cited *Vawter v. Rogue Valley Can. Co.*, 124 Or 94, 99, 257 P 23, 262 P 851 (1928), as authority for that proposition. 207 Or at 258. The court also said that, in determining whether a substituted agreement is a novation:

"The creditor's assent to hold the new debtor liable is immaterial unless there is assent to give up the original debtor. *Haines v. Pacific Bancorporation*, 146 Or 407, 413, 30 P2d 763 [(1934)]." *Ibid.*

In *Haines*, the court further explained:

" 'To work a novation, it is not enough that a promise has been made to the original debtor to pay the debt; nor does the assent of the creditor help the matter unless an offer was made to him. The theory of novation is that the new debtor contracts with the old debtor that he will pay the debt, and also to the same effect with the creditor, while the latter agrees to accept the new debtor for the old. A novation is not made out by showing that the substituted debtor agreed to pay the debt. It must appear that he agreed with the creditor to do so. Moreover, this agreement must be based on the consideration of the creditor's agreement to look to the new debtor instead of the old. The creditor's assent to hold the new debtor liable is therefore immaterial unless there is assent to give up the original debtor.' " 146 Or at 413 (quoting Samuel Williston, *Contracts for the Benefit of a Third Person*, 15 Harv L Rev 767, 771 (1902)).

This court's subsequent cases discussing novation emphasize the importance of the principles from *Vawter* and *Haines*, discussed above — there must be a release by the creditor, here lawyer Thompson, of all further claim against the original debtor, here the Tuckers, and the creditor must

agree to accept the new debtor, here Toyoda, who must in turn agree to pay the old debt to the creditor. Therefore, to constitute a novation, the discharge of the old debt must be contemporaneous with the formation of the agreement that the new debtor will pay the creditor and result directly from it.[8] As Arthur L. Corbin, 6 *Corbin on Contracts* section 1297, 222 (rev ed 1962), puts it:

> "To constitute a novation, it must be clear that the new promise was itself accepted in immediate satisfaction of the old obligation to the plaintiff and not merely that the plaintiff agreed that actual performance by the new party should when rendered operate as a satisfaction."

Samuel Williston & Walter H.E. Jaeger, 15 *A Treatise on the Law of Contracts* § 1842-48, 521-34 (3d ed 1972), states that, where a new contract is substituted for the previous one, as in a novation, the prior contract is discharged.

Corbin, 6 *Corbin on Contracts* sections 1297, 1299, 1302, 213-14, 225, 231-32, provides an extended discussion of novations, from which the following excerpt is particularly relevant:

> "**§ 1297. Discharge by Novation.**
>
> "The term 'novation' is never used except to denote a substituted executory contract. There must always be a prior obligation, actual or asserted, that is discharged and a new obligation that takes its place. If the parties to the new executory contract are identical with the parties to the former obligation that is being discharged, the term 'novation' is less often used. It is generally used only when the substituted contract involves at least one new party; and according to the more general practice, this new party must be a substituted obligor in place of a former obligor or debtor who is discharged."[9]

---

[8] Principles similar to those of *Vawter* and *Haines* were summarily applied by another court to discharge a prior attorney fee agreement. That court said:

"The parties' consent to a substituted agreement discharged appellants' obligations under the original contract. *See* 6 *Corbin on Contracts* § 1293 (2d ed. 1962). Appellants' alleged breach did not revive the original agreement. *Id.* The district court therefore erred in enforcing it." *Malanca v. Falstaff Brewing Co.*, 694 F2d 182, 184 (9th Cir 1982).

[9] In *Washington v. Heid*, 264 Or 179, 184, 504 P2d 745 (1972), this court commented, appropriate to the facts of this case and consistent with the explanation in Corbin, that:

Section 279 of the Restatement (Second) of Contracts (1981) provides:

"(1)   A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.

"(2)   The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty."

Section 280, of the Restatement states:

"A novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty.

"Comment:

"*a.   Definition of novation.* The word 'novation' is used in this Restatement to refer to a type of substituted contract that has the effect of adding a party, either as obligor or obligee, who was not a party to the original duty. See Comment *a* to § 279. * * * [P]erformance to be rendered under the new duty may be the same as or different from that to be rendered under the original duty. * * *

"*b.   Effect of novation.* A novation discharges the original duty, just as any other substituted contract does, so that breach of the new duty gives no right of action on the old duty.[10] Most novations simply substitute a new obligor for an old obligor or, less commonly, a new obligee for an old obligee.

"* * * * *

"*f.   Compound novations.* The novations already described involve a simple substitution of one obligor or obligee for another. More complex transactions, sometimes

---

"where the original obligation is unliquidated and the subsequent agreement is for a definite sum, courts will usually hold the subsequent agreement to be a substituted contract. *Mays v. Stegeman*, 213 Ky 60, 280 SW 464 (1926)."

10 The decisions of this court agree, as quoted above. In addition, in *Winkleman v. Ore.-Wash. Plywood Co.*, 240 Or 1, 7, 399 P2d 402 (1965), a second contract stated:

" 'At your request, we are:

"*A.   Hereby canceling our agreement with you* * * *[.]' "

The court held that the second contract was a "substituted contract completely replacing the prior one." *Ibid. See Marnon v. Vaughan Motor Co., Inc.*, 184 Or 103, 157, 194 P2d 992 (1948). (" 'The new contract supersedes the first to the extent that the two will be unable to stand together.' " (quoting 17 CJS, *Contracts*, 869, § 379)).

called compound novations, are possible. If, for example, there are two duties and the obligee of the first is the obligor of the second, the three parties may agree that one party shall drop out altogether. * * * Furthermore, if each of two parties has a right against the other, they may agree with a third party that the third party shall immediately acquire a right against and be subject to a duty to one of them in substitution for the original right of and duty due the other. The new right and duty may be for performances that are the same as or different from the original ones.''

When the Tuckers signed their names to the July agreement they consented to and gave life to the provision thereof that honored Thompson's lien for attorneys fees in substance.[11] They joined in transferring to Thompson as a new creditor part of their rights as a creditor in the verdict against the debtor, Toyoda. They also joined in acknowledging that Toyoda was discharged of any further obligation to them, as to the portions of their former right against Toyoda and its debt to them that were agreed in the July agreement to be paid by Toyoda directly to Thompson. Their apparent rights as creditors of Toyoda were, in part, transferred to Thompson. Their duties as debtors, stated in an exact amount to be paid Thompson, also were transferred to Toyoda. Thompson assented to both transfers in the form of the July novation agreement, as did the Tuckers. By law, that novation discharged the prior attorney fee contracts or other obligations for which the rights and duties declared in the July novation were substituted.

The Tuckers argue that they did not assent to the discharge of their inchoate rights as potential creditors of Thompson based on the claimed excessiveness of his fee. We neither decide nor dispute that claim, except insofar as it relates to the basing of their claim on a theory of breach of the earlier attorney fee contracts that have been discharged by novation. As to them, the argument is foreclosed because, being discharged by assent of the Tuckers and others to the

---

[11] The Court of Appeals' conclusion that Thompson's claim of an attorney's lien to secure payment of his attorney fee prevents the July agreement from covering the "same" subject matter as the earlier fee agreements founders on the facts of the items covered by the July agreement. Fee amounts are there, promise to pay is there, identification of the fee as being to represent the Tuckers in the Toyoda case is there. Adding a lien as security does not erase those items of subject matter which are the same subjects as those in the earlier contracts.

July agreement, those contracts no longer exist to provide any foundation for a breach of contract action based on them.[12] When the Tuckers gave their assent to substitute Toyoda's promise to pay for their obligation to pay Thompson's fees and when Thompson also assented to that substitution, the prior fee agreements were superseded and discharged by that novation. The surviving rights and duties are those promised in the novation.

The Tuckers also argue that a novation or substituted contract discharging the prior contract between two parties cannot occur in law wherever a new or third party, such as Toyoda is here, is involved in the new agreement. They cite to *Dorsey* and its language, quoted above more fully, that states:

"A substituted contract, or a novation, in which the sole participants are the parties to the original agreement or obligation * * *." 192 Or at 173.

Reliance on that language is mistaken. It is not part of the holding, but only a description of the peculiar facts in that case. At most, it indicates that the *Dorsey* court believed that a novation is possible in Oregon between two parties to an earlier contract without involving a new, third party as a substituted debtor or creditor. However, as Williston, 15 *Law of Contracts* § 1865, 582-83, points out:

"The term 'novation' is more usually applied in the common law to a transaction in which the substituted contract has a new party. Merger, substituted contract, accord and satisfaction, account stated, release, or rescission are the terms ordinarily used to cover contracts between the same parties which discharge prior obligations."

The Tuckers' argument that novations are possible only between the original parties also is undercut by section 280 of the Restatement (Second) of Contracts, quoted above. That section reserves use of the term "novation" to denote contracts adding another party as obligor or obligee.

---

[12] A contract is not the only basis for a claim of excessive fees. DR 2-106(A) provides:

"A lawyer shall not * * * charge [a] * * * clearly excessive fee." *See In re Gastineau*, 317 Or 545, 551, 857 P2d 136 (1993) (discussing the subject and its remedies as a professional disciplinary matter).

For the reasons stated, the Court of Appeals erred when it declared the supersession clause ambiguous and failed to enforce it as a novation as a matter of law. The circuit court erred likewise by not enforcing the July settlement agreement as a matter of law. That court also erred by voiding a portion of the escrow agreement, an error already corrected by the Court of Appeals.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for entry of judgment.